# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

|  |  |
|---|---|
| **ALBERT ROBINSON,** | |
| *Plaintiff,* | |
| **v.** | |
| **JONATHAN CHASE MCNEESE; DAVID KEITH OAKS; DAVID KEITH OAKS, P.A.; TIFFANY HUGGINS; FLORIDA HIGHWAY SAFETY & MOTOR VEHICLES DEPARTMENT; and DOOLY COUNTY, GEORGIA,** | **CIVIL ACTION NO. 5:20-cv-00160-TES** |
| *Defendants.* | |

## ORDER

Plaintiff brings this action under 42 U.S.C. § 1983 against six defendants, alleging, *inter alia*, that they each engaged in a conspiracy to deprive him of his civil rights by falsely arresting and detaining him with the sole design to prevent Plaintiff from appearing/testifying at a court hearing. Only two of the six defendants have appeared in this action—Defendants Huggins and McNeese. Both have filed motions to dismiss that are pending before the Court for consideration.[1] For the reasons discussed below, the Court **GRANTS** Defendant Huggins' Motion to Dismiss [Doc. 21] and, as a result,

---

[1] Defendants McNeese and Huggins both filed dismissal motions based on failure to state a claim *See* [Doc. 12]; [Doc. 21]. Defendant Huggins also seeks dismissal for lack of personal jurisdiction. [Doc. 21-1, pp. 3–7].

**TERMINATES as moot** Plaintiff's Motion for Partial Summary Judgment against her.

[Doc. 29]. Also, the Court **GRANTS in part** and **DENIES in part** Defendant McNeese's

Motion to Dismiss [Doc. 12].

## FACTUAL BACKGROUND

Succinctly put, Plaintiff claims that Defendant Huggins, an employee of the

Florida Highway Safety and Motor Vehicles Department, conspired with Defendant

McNeese[2], a deputy sheriff in Dooly County, Georgia, to violate his Fourth and Eighth

Amendment rights. [Doc. 8, ¶¶ 2, 6, 8, 10].

Plaintiff alleges that he intended to appear at a court hearing in Florida on June

17, 2019, to resolve a matter involving the dispossession of his house. [*Id.* ¶¶ 9–10].

According to Plaintiff, he originally lost his home because Defendant Oaks, a Florida

attorney, organized a wide-spread fraud scheme by which he defrauded "numerous

elderly handicapped seniors, banks, the federal government, and [] Plaintiff" of cash

and real estate "by way of false deed restriction violations and lis pendens suits." [*Id.* at

¶¶ 4, 9, 16]. Plaintiff contends that "[Defendant Oaks] conspired with [Defendant

Huggins], who in turn conspired with [Defendant McNeese]" to prevent Plaintiff from

physically appearing and testifying in court on the date of the hearing. [*Id.* at ¶¶ 8, 10,

16]. To achieve this objective, Plaintiff alleges that Defendant Huggins, who works for

---

[2] To be sure, as explained below, Plaintiff thinks that all Defendants conspired against him. But, Plaintiff hasn't served the majority of the Defendants yet. So, in order to rule on the pending motions to dismiss, the Court focuses only on Defendant Huggins and McNeese.

the state of Florida, falsely suspended Plaintiff's Texas driver's license and then sent information regarding the false suspension to Defendant McNeese. [*Id.* at ¶¶ 6, 10, 20]. For the next phase of the alleged conspiracy, Plaintiff contends that Defendant McNeese, who works as a deputy sheriff for the Dooly County Sheriff's Office in central Georgia, would use this information to falsely arrest Plaintiff for driving with a suspended license. [*Id.* at ¶¶ 6, 10, 16, 32, 52–53, 85]. Finally, Defendant McNeese would then transport Plaintiff to the Dooly County Jail, where he would remain incarcerated just long enough to prevent him from attending the hearing mentioned earlier. [*Id.* at ¶¶ 6, 8, 10, 16].

These factual allegations constitute the basis for Plaintiff's conspiracy claims. The Court now turns to those events alleged to have occurred on the date of Plaintiff's arrest through the lens of the overall objectives of the alleged conspiracy.

On June 25, 2019, Defendant McNeese pulled over a vehicle operated by Plaintiff along Interstate 75 in Dooly County, Georgia, for not maintaining his lane.[3] [*Id.* at ¶¶ 20–22]. During this stop, Defendant McNeese asked Plaintiff to present his driver's license. [*Id.* at ¶ 23]. Plaintiff complied and presented his Texas driver's license. [*Id.*]. Upon review, Defendant McNeese informed Plaintiff that the state of Florida had

---

[3] Plaintiff alleges that prior to the traffic stop, Defendant McNeese had "follow[ed him] for a mile or two in order to find some scintilla of a cause to initiate a traffic stop." [Doc. 8. at ¶ 21]. Then, "[Defendant McNeese] stopped [] Plaintiff based on [his] claim that [] Plaintiff's vehicle wheel crossed over the broken line dividing the far right lane and the center lane of the highway." [*Id.* at ¶ 22].

suspended his Texas license on January 31, 2019. [*Id.* at ¶ 24]. Plaintiff told Defendant McNeese that he was unaware of any suspension and proceeded to detail his belief that someone falsely created the suspension in retaliation for his "part in uncovering and reporting [a] fraud scheme to the [Department of Justice]." [*Id.* at ¶¶ 25–26]. In support of his argument, Plaintiff told Defendant McNeese that the individuals involved in this fraud scheme previously sought to injure him through the guise of an "expired license scheme." [*Id.* at ¶ 25]. Although Plaintiff provided further detail as to why he believed the suspension was false, Defendant McNeese arrested Plaintiff for driving with a suspended license in violation of O.C.G.A. § 40-5-121 and transported him to the Dooly County Jail. [*Id.* at ¶¶ 32–34, 85]. At all times relevant to this interaction, Plaintiff maintained that he possessed a valid Texas driver's license. [*Id.* at ¶¶ 23, 32, 34]. Plaintiff remained incarcerated from 10 p.m. on June 25, 2019 to 4 p.m. on June 26, 2019, about 18 hours total. [*Id.* at ¶ 52]. Keep in mind that Plaintiff contends that Defendant Huggins and McNeese incarcerated him in Georgia on June 25, 2019, as part of a conspiracy to prevent him from testifying at a court hearing in Florida that supposedly occurred eight days *earlier*. [*Id.* at ¶¶ 6, 8, 10]. Lastly, while incarcerated, Plaintiff alleges that he was deprived of "food, fluids[,] and medical treatment[]" in violation of his Eighth Amendment rights. [*Id.* at ¶¶ 37, 91–92].

## DISCUSSION

**A.   Applicable Standards**

**1.   *Pro se* pleading standard**

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, the Eleventh Circuit has clarified that this "liberal construction" standard "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Lowe v. Delta Air Lines Inc.*, 730 F. App'x 724, 728 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 431 (2018) (quoting *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014)). Furthermore, even a *pro se* litigant must adhere to the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

**2.   Motion to dismiss standard**

When ruling on a Rule 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint survives a motion to dismiss if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In

fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts use a two-step framework. *Id*. The first step is to identify the allegations that are "no more than mere conclusions." *Id*. (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id*. (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333; *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S.

at 679). While courts, in ruling on a motion to dismiss, must take all the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

### B.   Plaintiff's Amended Complaint Against Defendants Huggins and McNeese

Plaintiff, proceeding *pro se*, largely bases this action on the premise that all six

7

defendants conspired to prevent him from appearing in a Florida county court hearing

on June 17, 2019. [Doc. 8, ¶¶ 6, 8, 10]. Despite the significance of this claim, it appears

that Plaintiff failed to enumerate a § 1983 conspiracy charge against any defendant in

his Amended Complaint as required by FRCP 8 and 10.[4] However, since Plaintiff

---

[4] The Court notes that Plaintiff may have intended to bring a § 1983 conspiracy claim in "Count III" of his Amended Complaint. [Doc. 8, pp. 14–15]. However, the facts asserted under this third count also largely pertain to his false arrest claims against Defendants Dooly County and McNeese. [*Id.* at ¶¶ 66–74]. Therefore, since the alleged conspiracy involves other defendants, including Defendant Huggins, it appears highly unlikely that Plaintiff intended this third count to serve as the sole representation of his conspiracy claim. Furthermore, the Court is unable to discern the full nature of the claim asserted in this third count. For example, Plaintiff appears to bring a secondary conspiracy claim under a completely different statute—42 U.S.C. § 1985. [*Id.* at ¶ 72 ("[Defendant McNeese] was in direct violation of 42 U.S. Code § 1985 – Conspiracy to interfere with civil rights.")]. This is the only reference to Plaintiff's intention to allege a conspiracy claim under this statute. Rather, Plaintiff very clearly styles this action as one arising under 42 U.S.C. § 1983. For example, Plaintiff titles his Amended Complaint as "Plaintiff's First Amended 1983 Civil Rights Complaint to Recover Damages and Injunctive Relief." [*Id.* at p. 1]. *See also* [*id.* ("Plaintiff . . . files this First Amended Complaint under . . . 42 U.S.C. § 1983[] for damages resulting from the knowing and intentional deprivation of [] Plaintiff's [c]ivil [r]ights as guaranteed under the U.S. Constitution.")]. However, since Plaintiff alleges Defendant McNeese conspired to violate his civil rights under § 1985, the Court considers whether he pled sufficient facts to maintain such a claim beyond the motion to dismiss stage. To state a § 1985 conspiracy claim to interfere with civil rights, a plaintiff must plead facts showing:

> (1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (citation omitted). Furthermore, "the second element requires a showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"*Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996) (citation omitted). First, for the reasons discussed in detail below, Plaintiff fails to state sufficient facts to allege the existence of a conspiracy. Second, Plaintiff does not allege facts in his Amended Complaint that indicate Defendant McNeese engaged in *any* action motivated by discriminatory animus. Instead, Plaintiff alleges that Defendant acted with the intent to prevent him from attending a court hearing. This is clearly not discriminatory animus. Since Plaintiff did not plead sufficient facts to show the first two elements of a conspiracy claim under § 1985, the Court dismisses the claim (to the extent it was raised) based on failure to state a claim.

proceeds without legal counsel, the Court construes Plaintiff's Amended Complaint liberally. *Erickson,* 551 U.S. at 94. In so doing, the Court concludes that Plaintiff's Amended Complaint provides fair notice to Defendants Huggins and McNeese of a potential § 1983 conspiracy claim. *See* [Doc. 8]. As further evidence of this point, both Defendants acknowledge Plaintiff's attempt to bring such a claim in their respective motions to dismiss. *See* [Doc. 12]; [Doc. 21].

Plaintiff's Amended Complaint asserts claims against Defendant McNeese, in his official[5] and individual capacities, based on violations of Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights, including claims for unreasonable search and seizure, false arrest, false imprisonment, cruel and unusual punishment, and conspiracy to

---

[5] While Plaintiff brings claims against Defendant McNeese in his official capacity as a deputy sheriff for the Dooly County Sheriff's Office, they are barred by Eleventh Amendment immunity. The Eleventh Amendment "bars suits brought in federal court when . . . an 'arm of the State is sued.'" *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1107 (2004). In Georgia, a sheriff "is considered an 'arm of the State' when performing law enforcement functions, such as detaining and arresting suspects." *Richardson v. Quitman Cnty.*, 912 F. Supp. 2d 1354, 1366 (M.D. Ga. 2012). In this action, Defendant McNeese performed such law enforcement duties when he stopped Plaintiff's vehicle for a traffic violation and detained him. Therefore, Defendant McNeese is entitled to Eleventh Amendment immunity for claims against him in his official capacity.

violate these constitutional rights.[6] And, as to Defendant Huggins[7], the Amended

Complaint asserts a Fourth Amendment violation for unreasonable search and seizure,

and conspiracy to violate this constitutional right. [Doc. 8, p. 10–11].

Defendant McNeese moved to dismiss[8] all claims against him in this action for

failure to state a claim and raised the defense of qualified immunity. *See* [Doc. 12-1].

Defendant Huggins moved to dismiss[9] for lack of personal jurisdiction, failure to state a

---

[6] Plaintiff also appears to allege that Defendant McNeese violated 18 U.S.C. § 1512 when he arrested Plaintiff for driving with a suspended license, because he "tamper[ed] with a witness, victim or an informant" by preventing Plaintiff from attending a court hearing. [Doc. 8, ¶ 72]. However, there is no private cause of action under this statute. *See Baker v. City of Hollywood*, No. 08-cv-60294, 2008 WL 2474665, at *9 (S.D. Fla. June 17, 2008) ("Nothing in 18 U.S.C. § 1512 suggests that it creates a private right of action.") *aff'd*, 391 F. App'x 819 (11th Cir. 2010).

[7] It is unclear whether Plaintiff sues Defendant Huggins in her official capacity, individual capacity, or both. To the extent Plaintiff sues Defendant Huggins in her official capacity, as a state employee, the claim is barred by the Eleventh Amendment and principles of state sovereignty. *Alden v. Maine*, 527 U.S. 706, 712–13 (1999). States enjoy immunity from private suits pursuant to the Eleventh Amendment. *Id.* "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the [state itself]." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). Therefore, it is prohibited.

[8] Plaintiff responded to Defendant McNeese's Motion to Dismiss, arguing that "the [M]otion is untimely and should be dismissed." [Doc. 14, p. 1]. However, upon review of the relevant filing dates, the Court concludes that Defendant McNeese timely filed his Motion. Plaintiff filed an original Complaint on April 24, 2020. [Doc. 1]. In turn, Defendant McNeese timely filed his Answer [Doc. 6] on September 7, 2020. Thereafter, on August 4, 2020, Plaintiff filed an Amended Complaint [Doc. 8], and it superseded any former pleadings by Plaintiff. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Therefore, Plaintiff's Amended Complaint nullified his original Complaint, which rendered void Defendant McNeese's original Answer. Therefore, Defendant McNeese could either answer the Amended Complaint or file a Rule 12 motion in response. Defendant McNeese chose to submit a Rule 12 motion, and he filed his Motion to Dismiss in the appropriate timeframe. [Doc. 12]. The Court concludes that the Motion to Dismiss is procedurally proper.

[9] In his Response to Defendant Huggins' dismissal motion, Plaintiff claims that Defendant Huggins did not properly provide him with court filings (including her Motion to Dismiss) which prevented him from being informed about relevant case proceedings. [Doc. 30, p. 12]. To resolve this matter, the Court considers Federal Rule of Civil Procedure 5(b)(2)(C), which allows parties to serve written motions on an

claim, and similarly raised the defense of qualified immunity. *See* [Doc. 21-1]. The Court now considers whether Plaintiff adequately stated any claim against Defendants upon which relief could be granted in his Amended Complaint.[10]

### 1.   Conspiracy claims against Defendant Huggins and McNeese

"A conspiracy to violate another person's constitutional rights violates [§] 1983." *Pittman v. State Farm Fire & Cas. Co.*, 626 F. App'x 873, 880 (11th Cir. 2016); *see Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy

---

opposing party by "mailing it to the person's last known address—in which event service is complete upon mailing[.]" Alternatively, under this statute, a party may choose to serve such motions by "sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means—in which event the person consented to in writing—in either of which events service is complete upon filing or sending." Fed. R. Civ. P. 5(b)(2)(C). Regarding service by mail, "the common law has long recognized a rebuttable presumption than an item properly mailed was received by the addressee." *In re Farris*, 365 F. App'x 198, 199 (11th Cir. 2010). This presumption "may be rebutted . . . by producing evidence which would 'support a finding of the non-existence of the presumed fact.'" *Id.* (quoting *In re Prescott*, 285 B.R. 763, 767 (Bankr. S.D. Ga. 2001). However, "the mere denial of receipt, without more, is insufficient to rebut the presumption." *Id.* Here, Defendant Huggins' motion to dismiss contains a certificate of service, affirming that the document was mailed to Plaintiff on September 9, 2020 to an address on record, and emailed to him. *See* [Doc. 21-1, p. 16]. Therefore, the Court presumes Plaintiff received this document, and his assertion that he did not receive it is not sufficient to rebut this presumption. Also, Plaintiff clearly had the opportunity to respond to the motion, thereby evidencing his receipt of the document. Accordingly, the Court concludes that Defendant Huggins met her burden of serving documents on Plaintiff, and now considers the merits of her dismissal motion.

[10] In his Responses [Doc. 14]; [Doc. 30] to both dismissal motions, Plaintiff alleges numerous facts and claims not included in his Amended Complaint. "Factual allegations 'must be properly linked' in the complaint, not the response." *Cunningham v. Fulton Cnty.*, No. 1:17-CV-05512-RWS, 2019 WL 162396, at *4 (N.D. Ga. Jan. 10, 2019) (citing *In re Androgel Anitrust Litig. (No. II)*, 687 F. Supp. 2d 1371, 1381 (N.D. Ga. Feb. 22, 2010)). Furthermore, to the extent that Plaintiff requests the Court to consider outside sources, such as newspaper articles or the arrests of other individuals, as factual allegations to support his claims, this is not the appropriate stage of proceedings for the Court to do so. On a motion to dismiss, the Court must consider only those facts specifically pled in the plaintiff's complaint.

existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). Therefore, "[t]o state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015). In cases alleging civil rights violations and conspiracy, "more than mere conclusory notice pleading is required[]" for a complaint to survive a motion to dismiss. *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984).

This is the first problem with Plaintiff's § 1983 conspiracy claims. "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman*, 739 F.2d at 557. However, most of the allegations in the Amended Complaint do just that. *See* [Doc. 8, ¶ 8 ("The Defendants have conspired and indeed deprived [] Plaintiff of his civil rights and [Fourth and Eighth] Amendment rights . . .)]; [*id.* at ¶ 10 ("Because [Defendant Oaks] was losing in the county case [he] conspired with [Defendant Huggins], who in turn conspired with [Defendant McNeese], to create a false suspension . . .")]; [*id.* at ¶ 32 ("[Defendant McNeese] . . . falsely arrested [] Plaintiff for [driving with a suspended license] based on his agreement with [Defendant Huggins].")]. Such allegations are simply "not entitled to the assumption of truth," and therefore, must be disregarded. *See Iqbal*, 556 U.S. at 679.

12

The second problem with Plaintiff's § 1983 conspiracy claims is that Plaintiff does not allege facts indicating that Defendants reached an agreement or understanding to violate his constitutional rights—a requisite element in any § 1983 claim for conspiracy. *See Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement, which presupposes communication.")). The conspiracy alleged here involves multiple actors, and it appears to begin with Defendant Oaks.[11] Allegedly, Defendant Oaks, with the design to prevent Plaintiff from testifying at a June 17th court hearing in Florida, conspired with Defendant Huggins to falsely suspend Plaintiff's Texas driver's license. [Doc. 8, ¶ 8–10]. However, the only allegation of a specific act taken by Defendant Oaks is that he *conspired* with Defendant Huggins. [*Id*. at ¶ 10]. Plaintiff does not allege *any* facts indicating a communication between the two that might plausibly evidence an agreement to falsely suspend Plaintiff's Texas driver's license.[12]

On to the second link in this conspiracy. Here, Plaintiff alleges that Defendant Huggins "sent that information [i.e., the false suspension record] to [Defendant

---

[11] The Court does not issue a ruling on any claim asserted against Defendant Oaks in this Order. Rather, the Court references his participation in the alleged conspiracy for context and to fully analyze the extent of Plaintiff's § 1983 conspiracy claims. At this point in the proceedings, Defendant Oaks has not appeared in this action.

[12] Plaintiff never elaborates on exactly how a Florida employee could invalidate a driver's license from another state. Nor does he tell us exactly how Huggins chose or recruited McNeese for a role in the conspiracy.

McNeese], by either wire or U.S. [m]ail" in furtherance of the conspiracy. [*Id.* at ¶ 6]. This communication is speculative at best.[13] While a "plaintiff does not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he still] must show some evidence of agreement between the defendants." *Rowe*, 279 F.3d at 1283–84 (citations omitted). Here, Plaintiff did not plead sufficient facts in his Amended Complaint to show a plausible communication between any alleged conspirators about the supposed or intended conspiracy. Because there was no such communication, there was no agreement, and ultimately—no conspiracy.

That said, even if the facts sufficiently showed a communication between Defendants Huggins and McNeese, Plaintiff's conspiracy claims would still not survive a motion to dismiss. That's because a communication is not an agreement. Plaintiff never included any facts concerning when or how Defendants reached an agreement to violate Plaintiff's rights. There are no facts pertaining to the actual substance of such agreement. *See Foster v. Cherokee Cnty.*, No. 1:17-CV-1654-MHC, 2017 WL 8785573, at *4 (N.D. Ga. Nov. 20, 2017) (dismissing plaintiffs' conspiracy claims against defendants because they failed to allege facts "concerning when or how an agreement was reached between the various defendants, the substance of that agreement, or the specific nature

---

[13] For a claim to survive a motion to dismiss, the plaintiff must state factual allegations in his pleadings that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

of the relationship between the defendants[]"); *Vaughan v. City of Sandy Springs*, No.

1:09-CV-2852-ODE-WEJ, 2010 WL 11508351, at *12–13 (N.D. Ga. May 25, 2010). And his

Amended Complaint contains no facts indicating a relationship between all Defendants

from which the Court could infer an agreement. *See Grider*, 618 F.3d at 1260 (discussing

how a plaintiff may prove the existence a § 1983 conspiracy through use of

circumstantial evidence); *Am. Fed'n of Lab. and Cong. of Indu. Orgs. v. City of Miami*, 637

F.3d 1178, 1192 (11th Cir. 2011) ("[A]n agreement may be inferred 'from the relationship

of the parties, their overt acts and concert of action, and the totality of their conduct . . .

.'") (citation omitted).

Here, Plaintiff merely alleges that each Defendant committed individual acts,

that when viewed together, prove the existence of a conspiracy. But, a plaintiff cannot

"merely string together" adverse acts of individuals as evidence of a conspiracy. *Harvey*

*v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). Since Plaintiff does not state sufficient

facts to support a plausible § 1983 conspiracy claim against Defendants Huggins or

McNeese, the Court dismisses any conspiracy claims against them.

### 2. Individual claims against Defendant Huggins

Plaintiff brings a Fourth Amendment claim for unreasonable search and seizure

against Defendant Huggins for her alleged role in the June 25, 2019 traffic stop by

Defendant McNeese. As noted earlier, Defendant Huggins, who is not a Georgia

resident, works for the Florida Highway Safety and Motor Vehicles Department. She is

not a law enforcement officer. Nor are there any facts indicating that she physically detained or searched Plaintiff during the traffic stop at issue in this action. Rather, it appears that Defendant Huggins' sole liability under this cause of action potentially arises from her alleged involvement in a conspiracy to prevent Plaintiff from attending a court hearing by specifically violating his Fourth Amendment rights. In her Motion to Dismiss, Defendant Huggins largely moves to dismiss the claims against her based on a lack of personal jurisdiction and failure to state a claim. [Doc. 21].

"When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996). In regards to the statute at issue in this action, the Tenth Circuit has specifically stated that "[b]ecause 42 U.S.C. § 1983 does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims," such courts must refer to the applicable state's long-arm statute. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Therefore, a court should first refer to the state's long-arm statute to determine whether a nonresident may be subject to jurisdiction in the forum state. *Scultpchair*, 94 F.3d at 627.

> Along these lines, federal courts apply the same two-part analysis in both federal question and diversity cases: a court must have jurisdiction under both the forum state's long-arm statute and under the Due Process Clause.

16

> *Compare Cable/Home* [*Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)] (in federal question case[s],"[t]the determination of personal jurisdiction over a non-resident defendant requires a two-part analysis by the federal courts") *with Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) ("A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.") (citing Fed. R. Civ. P. 4(k)(1)(A)).

*Chriswell v. Atlantic Records*, NO: 1:18-cv-05124-WMR, 2019 WL 7810812, at *1 (N.D. Ga. Jun. 4, 2019). Upon considering this framework, it is without question that "the exercise of personal jurisdiction in Georgia requires a court to find that at least one prong of the long-arm statute is satisfied." *Diamond Crystal Brands*, 593 F.3d at 1260; *see Rudo v. Stubbs*, 472 S.E.2d 515, 516 (Ga. Ct. App. 1996). And it is the plaintiff who bears the initial burden of alleging sufficient facts in his *complaint* to establish such jurisdiction over a nonresident defendant. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

In his Amended Complaint, Plaintiff does not state which provision under the Georgia long-arm statute applies in this matter that would confer jurisdiction over Defendant Huggins. Nor does Plaintiff allege *specific* acts undertaken by Defendant Huggins for the Court to readily conclude that its exercise of jurisdiction over her would be proper. Rather, it largely appears that Plaintiff bases the Court's jurisdiction

on the specific allegation that "[Defendant Huggins] created the information that []
Plaintiff's driver's license was suspended and sent that information to [Defendant
McNeese], by either wire or U.S. [m]ail, so that [Defendant McNeese] could arrest []
Plaintiff for driving [with a suspended license] . . ." [Doc. 8, ¶ 6] and her alleged role in
the aforementioned conspiracy. The Court concludes that Plaintiff has not met his initial
burden of establishing jurisdiction over Defendant Huggins under either premise.

First, there is no provision under the Georgia long-arm statute which confers
jurisdiction over a nonresident because she committed acts in a different state that had
an impact on how an individual behaved in the forum state. Here, Plaintiff alleges that
Defendant Huggins created false information in Florida and sent that information to a
Georgia resident—Defendant McNeese. Then, Defendant McNeese allegedly used that
information to falsely arrest Plaintiff and violate his civil rights. All acts undertaken by
Defendant Huggins occurred outside the forum state. She created the information
outside of Georgia, and she sent the information, via "wire or U.S. [m]ail" outside of
Georgia. [*Id.*]. For example, in similar cases where defendants used telephones, emails,
and other technological means of sending information to Georgia residents, courts have
held that the "defendant's conduct occurs at the place" from where he sends the
communication. *LABMB, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir. 2013); *see
Anderson v. Deas*, 632 S.E.2d 682 (Ga. Ct. App. 2010); *Huggins v. Boyd*, 697 S.E2d 253 (Ga.
Ct. App. 2010). Defendant Huggins allegedly sent the false suspension information

from Florida, not Georgia. Therefore, given Defendant Huggins' limited contacts with the forum state, the Court must conclude that it does not have jurisdiction over her under the Georgia long-arm statute. *See* O.C.G.A. § 9-10-91(1)–(6).

In the alternative, it appears that Plaintiff alleges that the Court can exercise personal jurisdiction over Defendant Huggins under a "conspiracy theory" of personal jurisdiction. Several district courts have considered the merits of such a theory, and its relationship to the long-arm statute when resolving jurisdictional questions. *See Dixie Homecrafters, Inc. v. Homecrafters of Am., LLC,* No. 1:08-CV-0649-JOF, 2009 WL 596009, at *7 (N.D. Ga. Mar. 5, 2009) ("The Georgia Long-Arm statute authorizes personal jurisdiction over a non-resident defendant who acts in a conspiracy with a defendant over whom the courts can exercise personal jurisdiction."); *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC,* No. 1:16-CV-949-MHC, 2016 WL 9454418, at * 4 (N.D. Ga. Dec. 28, 2016); *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-cv-02902-JEC, 2014 WL 688134, at * 7–8 (N.D. Ga. Feb. 21, 2014); *Iguana, LLC v. Lanham*, No. 7:08-CV-9 (CDL), 2012 WL 828698, at *3 (M.D. Ga. Mar. 9, 2012).

As a general matter, "the bare existence of a conspiracy is not enough to support long arm jurisdiction without a further showing of a 'contact' with the forum jurisdiction." *Sprint Nextel Corp.*, No. 1:12-cv-02902-JEC, 2014 WL 688134, at *4 (quoting *Coopers & Lybrand v. Cocklereese*, 276 S.E.2d 845, 849 (Ga. Ct. App. 1981) For a court to exercise jurisdiction over a nonresident under a "conspiracy theory" of jurisdiction, a

plaintiff "must show some level of relationship between the out of state defendant, the conspiracy, and the state of Georgia." *Curtis Inv. Co., LLC, v. Bayerische Hypo-Und Vereinsbank*, No. 1:06-cv-2752-WSD, 2007 WL 4564133, at *7 n.8 (N.D. Ga. Dec. 20, 2007). As discussed in detail above, Plaintiff did not allege sufficient facts to show the existence of a conspiracy. Therefore, the Court can't exercise personal jurisdiction premised on such a theory when there is no longer an alleged conspiracy in the action. Based on the facts as pled, and the requirements under a "conspiracy theory" of jurisdiction, the Court must conclude that Plaintiff did not meet his jurisdictional burden. The Court grants Defendant Huggins' Motion to Dismiss for lack of personal jurisdiction, and therefore, must not consider any additional claims alleged against her in this action.

### 3.  Individual claims against Defendant McNeese

#### a.  Unreasonable Search and Seizure—June 25, 2019 Traffic Stop

The Fourth Amendment guarantees the right of the people to be free from unreasonable searches and seizures by its government. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008); U.S. Const. amend. IV. "When police stop a motor vehicle, even for a brief period, a Fourth Amendment 'seizure' occurs." *U.S. v. Whitlock*, 493 F. App'x 27, 30 (11th Cir. 2012). Therefore, "an automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter, the decision to stop an

automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.*

Here, Plaintiff claims that the June 25, 2019 traffic stop lacked probable cause because it was pretextual— Defendant McNeese, "armed with the [false suspension information] from [Defendant Huggins]" intended to arrest Plaintiff in furtherance of the alleged conspiracy.[14] [Doc. 8, ¶ 20]. Because Plaintiff essentially alleges Defendant McNeese lacked probable cause based on the pretextual nature of the stop, the appropriate inquiry as to whether probable cause existed becomes "whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *United States v. Smith*, 799 F.2d 704, 708–09 (11th Cir. 1986). Therefore, to determine whether an officer had probable cause to initiate a traffic stop, "[courts] do not focus on the officer's subjective motives; rather, [courts] focus on whether the circumstances, viewed objectively, justified the stop." *U.S. v. Harrelson*, 465 F. App'x 866, 868 (11th Cir. 2012).[15] So, the proper inquiry at this stage in the proceedings is whether Plaintiff pled sufficient facts to show Defendant McNeese lacked probable

---

[14] Even though the Court dismissed any conspiracy claim, Plaintiff could still conceivably bring a stand-alone Fourth Amendment claim for false arrest, which he clearly does. Hence, dismissing any claim for conspiring to violate the Fourth Amendment via a false arrest doesn't automatically do away with a false arrest claim.

[15] *See also United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) ("The decision [in *Wren v. United States*, 517 U.S. 808 (1996)] conclusively refuted the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred.").

cause to stop his vehicle, ignoring any subjective desire on his part to act in furtherance of an alleged conspiracy.

Based upon the allegations in the Amended Complaint, Defendant McNeese stationed his vehicle along Interstate 75 in Dooly County, Georgia, when he noticed Plaintiff's vehicle. [Doc. 8, ¶¶ 10–11]. Defendant McNeese then "pulled out of the median and began to follow [] Plaintiff for a mile or two in order to find some scintilla of a cause to initiate a traffic stop." [*Id.* at ¶ 12]. Then, based on Plaintiff's Amended Complaint, Defendant McNeese found such a cause. He stopped Plaintiff's vehicle upon noticing that "[his] vehicle wheel crossed over the broken line dividing the far right lane and the center lane of the highway." [*Id.* at 12]. This is a traffic violation. *See* O.C.G.A. § 40-6-48(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]").

"A traffic stop is reasonable, and therefore constitutional, if the officer conducting the stop has probable cause to believe that a traffic violation has occurred." *Harrelson*, 465 F. App'x at 868. Defendant McNeese stopped Plaintiff's vehicle because he claimed that Plaintiff did not maintain his lane—a traffic offense. Under the Fourth Amendment, McNeese needed no other reason to conduct the traffic stop. Most importantly, Plaintiff does not contest the fact that he may have committed the alleged traffic offense. While Plaintiff alleges that Defendant had ulterior motives in stopping

22

his vehicle, he never claims a traffic violation did not occur. At most, he simply avers that Defendant McNeese lacked probable cause to initiate the stop because he never received a citation for the traffic violation.[16] [Doc. 8, ¶ 22]. This is simply not enough to state a claim for unreasonable search and seizure. Therefore, this claim is dismissed against Defendant McNeese.

> b.   False Arrest and False Imprisonment

Plaintiff next alleges that Defendant McNeese falsely arrested him for driving with a suspended license, which resulted in his false imprisonment at Dooly County Jail, in violation of his Fourth and Fourteenth Amendment rights. As a preliminary matter, the Court considers Plaintiff's false arrest and false imprisonment claims as a single claim. "When a plaintiff brings separate claims for false arrest and false imprisonment, the claims are condensed into a single false arrest claim when the false imprisonment claim arises from 'a detention on the basis of the false arrest.'"*Rockemore v. Tobin*, No. 5:16-cv-00325, 2018 WL 4169059, at *5 (M.D. Ga. Aug. 30, 2018) (quoting *Hill v. Macon Police Dep't*, No. 5:10-CV-472 (CAR), 2013 WL 594200, at *6 (M.D. Ga. Feb

---

[16] To the extent that Plaintiff attempts to show an absence of probable cause based on the fact that he did not receive a citation, and therefore, was not guilty of the traffic offense, such facts are not relevant to the ultimate issue. "The propriety of the traffic stop [ ] does not depend on whether the defendant is actually guilty of committing a traffic offense." *United States v. Sicairos-Sicairos*, Criminal Action File No. 4:10-CR-054-HLM, 2011 WL 2710031, at *5 (N.D. Ga. July 11, 2011). Moreover, accepting Plaintiff's statement as true would mean that every time a police officer gave a motorist a break and *didn't* write a ticket, that officer would violate the Constitution. Any such proposition just doesn't make sense.

15, 2013)). Here, Plaintiff claims that Defendant McNeese "placed Plaintiff under unlawful arrest and sentenced [him] to serve the minimum sentence for [driving with a suspended license [at Dooly County Jail]." [Doc. 8, ¶ 53]. Therefore, it appears that Plaintiff argues that his false imprisonment is a result of the alleged false arrest, and the Court "subsumes" Plaintiff's false imprisonment claim into his false arrest claim. *Hill*, No. 5:10-CV-472 (CAR), 2013 WL 594200, at *6. With this settled, the Court now turns to whether Plaintiff sufficiently pled a false arrest claim.

An arrest qualifies as a 'seizure' of a person under the Fourth Amendment. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011). Whether an arrest was reasonable under the Fourth Amendment "turns on the presence or absence of probable cause." *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009). "Probable cause to arrest exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013) (citation omitted). Given Plaintiff's version of the facts, *which the Court must accept as true*, an objective officer under the circumstances could not have believed that probable cause existed to arrest Plaintiff for driving with a suspended license. Here's why.

Plaintiff alleges that Defendant McNeese stopped his vehicle, requested his driver's license, and then almost immediately informed Plaintiff that the state of Florida suspended it in January 2019. [Doc. 8, ¶¶ 23–24]. Plaintiff refutes this claim, alleging

24

that he presented a valid Texas driver's license. [*Id.*]. Defendant McNeese responds to this portion of the Amended Complaint by alleging that he "checked" Plaintiff's driver's license, and this "check" showed that his license was suspended. [Doc. 12-1, p. 8–10]. Therefore, Defendant McNeese argues whether the driver's license was actually or even properly suspended is irrelevant, because he had probable cause to arrest based on the information supplied by the on-the scene check. [*Id.* at p. 5].

The Court does not dispute that an officer undeniably has probable cause to arrest an individual for driving with a suspended license based on a computer scan or database system that informs the officer that the license is in fact, suspended. *See United States v. Shirley*, No. 1:10-CR-167-JEC/AJB, 2010 WL 5390138, at *8–9 (N.D. Ga. Nov. 10, 2010) (discussing how a "computer check that revealed the defendant's driver's license was suspended constituted probable cause that he was driving on a suspended license" sufficient for an arrest.). However, that is not what *Plaintiff* alleged in his Amended Complaint. The problem for Defendant McNeese is that the court (and he as well) must accept Plaintiff's version of the events as true at this initial stage in the proceedings. Under Plaintiff's version of events, which currently controls the analysis, Defendant McNeese never checked his license through a database to determine it was suspended. The Court cannot simply infer or assume that Defendant McNeese performed the customary steps to ensure that Plaintiff's license was suspended. Rather, Plaintiff alleges that Defendant McNeese merely "disregarded" his valid driver's license upon

presentment and arrested him. [Doc. 8, ¶ 32]. These are the facts the Court must consider. The core of the allegation here is that Defendant McNeese *knowingly* violated the law when he *intentionally* disregarded a valid driver's license and arrested Plaintiff for driving with a suspended license. Based on the facts as pled, the Court has no choice but to conclude that there was no probable cause to arrest Plaintiff. Now, this doesn't mean that Plaintiff automatically wins or that the Court is ruling for Plaintiff on the merits. Not at all. This only means that Plaintiff pled his Amended Complaint sufficiently enough to fend off dismissal at the outset of the litigation.

Within this analysis, the Court also considers Defendant McNeese's defense of qualified immunity. "Qualified immunity shields government officials sued in their individual capacities who act pursuant to discretionary authority 'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Williams v. Alabama State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). However, qualified immunity does not provide any protection to those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). And here, the facts as pled (which the Court must accept) clearly indicate that Defendant McNeese arrested Plaintiff for driving with a suspended license when he knew his license was valid. Thus, for the reasons explained above, qualified immunity doesn't protect Defendant McNeese at the motion to dismiss stage.

Again, whether or not the defense ultimately shields Defendant McNeese is another question for another day. Evidence may emerge through discovery to show that Defendant McNeese had arguable probable cause to make an arrest, or perhaps, Defendant McNeese did conduct a computer scan of Plaintiff's license, and it was suspended. However, based on the facts as pled, Defendant McNeese's motion to dismiss Plaintiff's false arrest claim is denied.

c.    <u>Cruel and Unusual Punishment</u>

Although not specifically enumerated as an individual claim, Plaintiff appears to allege that Defendants Dooly County and McNeese failed to provide him adequate care for his medical condition, constituting cruel and unusual punishment in violation of the Eighth Amendment. As it relates here, the Court notes that Defendant McNeese is not a county jailer; rather, he works as a deputy sheriff that apparently works on the road as a patrolman as opposed to in the jail. True enough, Defendant McNeese arrested Plaintiff and transported him to the Dooly County Jail. But, Plaintiff alleges no facts to suggest that Defendant McNeese played any role in Plaintiff's treatment (personal, medical or otherwise) while incarcerated or that Defendant McNeese supervised him at all while he was in the jail.

To bring a claim under the Eighth Amendment, a detainee must demonstrate that a jail official was deliberately indifferent to his serious medical needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A plaintiff must satisfy both an objective and

a subjective inquiry to determine whether a jailer acted with deliberate indifference to serious medical needs. *Id.* at 1243. First, a plaintiff must establish "evidence of an objectively serious medical need," and second, must then "prove that that the [pretrial detainee] official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* (citation omitted).

As to the first element, it is unclear as to what Plaintiff alleges to be his "serious medical need." As a general matter, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (citation omitted), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Alternatively, a serious medical need may be determined by whether a delay in treating the need worsens the condition. *Hill*, 40 F. 3d at 1188–89. In both such cases, "the medical need must be one that, if left unattended, po[ses] a substantial risk of serious harm." *Farrow*, 320 F.3d at 1243 (citation omitted).

Here, it appears that Plaintiff claims his serious medical need to be that he is a vegetarian. For example, the crux of his claim alleges that Defendants "intentionally provided [him] foods containing meat substances and high sugar contents which lead *(sic)* to the formation of the blood clots in [his] lungs." [Doc. 8, ¶ 78]; *see also* [*id.* at ¶ 37 ("Defendants denied [] Plaintiff any vegan meals and the only fluids were flavored

sugar filled drinks which created, contributed to, and/or aggravated [] Plaintiff's medical condition.")]. But, Plaintiff never tells us what this "medical condition" actually is. Based on the facts as pled, it appears as though Plaintiff contends that his vegetarian/vegan lifestyle constitutes a serious medical need. However, he clearly does not plead sufficient facts to show us how. Although Plaintiff mentions that he has two pulmonary embolisms, he doesn't tell us when he got them, how he got them or that a medical doctor opined that an 18 hour denial of vegan or vegetarian friendly foods caused, from a medical perspective, those two blood clots. Finally, Plaintiff's Amended Complaint never says that Defendant McNeese knew anything about any of this.

As to the second element, in order to show Defendant McNeese acted with deliberate indifference to a serious medical need, Plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Plaintiff does not allege any facts to show that Defendant McNeese knew that Plaintiff was vegetarian/vegan, or that the consumption of "meat-based foods" and "sugary drinks" could cause Plaintiff to suffer pulmonary embolisms. Therefore, even if Plaintiff had alleged sufficient facts to show that Defendant McNeese knew Plaintiff was a vegetarian/vegan and solely provided him food contrary to his dietary wishes, he would still need to show that Defendant knew that a risk of serious harm, such as a pulmonary embolism, could result. Bottom line, Plaintiff does not allege sufficient facts

to state a claim for deliberate indifference to a medical need, and therefore any Eighth Amendment claim is dismissed against Defendant McNeese.

## CONCLUSION

As discussed above, the Court **GRANTS** Defendant Huggins' Motion to Dismiss [Doc. 21], and as a result, **TERMINATES as moot** Plaintiff's Partial Motion for Summary Judgment against Defendant Huggins [Doc. 29][17]. Also, the Court **GRANTS in Part** and **DENIES in Part** Defendant McNeese's Motion to Dismiss [Doc. 12], allowing only the false arrest claim against Defendant McNeese to proceed for factual development. While Plaintiff may not ultimately win on this claim, he will have the opportunity to make his case as to this claim in further proceedings.

Regarding discovery, the Court will allow Plaintiff and Defendant McNeese 60 days to conduct discovery, limited to the sole issue of whether qualified immunity applies to Defendant McNeese or not.

**SO ORDERED**, this 6th day of November, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**

---

[17] Plaintiff also made a Motion for Partial Summary Judgment against Defendant McNeese. [Doc. 13]. However, Plaintiff filed a brief that contained only argument. He submitted no affidavits or any evidence at all that would be admissible at trial as required by Rule 56. That rule makes it clear that any party moving for summary judgment must provide sufficient facts, in a form that would make them admissible at trial. Here, Plaintiff offered no evidence at all, only argument. For that reason, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment [Doc. 13]. But, after discovery, he may try again, provided that he complies with the rules this time.