IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ALBERT ROBINSON, <br><br> *Plaintiff*, <br><br> v. <br><br> JONATHAN CHASE MCNEESE, <br><br> *Defendant*. | CIVIL ACTION NO. <br> 5:20-cv-00160-TES |

**ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL AND MOTION FOR SANCTIONS**

During the discovery process, Plaintiff has filed a number of motions whereby he largely recounts his allegations of a conspiracy between formerly-named defendants. The Court has already ruled and repeatedly informed Plaintiff that the only remaining claim in this action pertains to an allegedly false arrest on June 25, 2019 by Dooly County deputy sheriff Jonathan Chase McNeese ("Defendant McNeese"). However, as evidenced in the discussion below, Plaintiff continues to ignore and defy the Court's rulings and orders by filing motions clearly aimed at widening the scope of this action. And, if that weren't enough, Plaintiff based several of his motions on the blatantly untrue assertion that the Court has ruled in his favor on the ultimate issue in this action. Of course, the Court has done no such thing and if Plaintiff continues to make such

untrue statements in filings, he should prepare to be sanctioned under Federal Rule of Civil Procedure 11. The Court has run out of patience with such filings.

For these reasons, along with those discussed in detail below, the Court **DENIES** the following motions: (1) Plaintiff's Motion to Compel Compliance with Subpoenas for Production of Documents and Things [Doc. 48]; (2) Plaintiff's second Motion to Compel [Doc. 69]; and (3) Plaintiff's Motion for Sanctions [Doc. 67].

## DISCUSSION

### A. Plaintiff's Motion to Compel (relating to the November subpoenas)

Upon review of the record, Plaintiff provided proof that he served nonparty subpoenas on the Florida Department of Highway Safety and Motor Vehicles (the "Department") and Dooly County, Georgia on November 18, 2020. [Doc. 45]; [Doc. 63-1, p. 2–3]. As to the subpoena served on the Department, Plaintiff mandated compliance with the requests for production by December 11, 2020. [Doc. 45]. And, as to the subpoena purportedly[1] served on Dooly County, Georgia, Plaintiff mandated compliance with the requests for production by December 12, 2020. [Doc. 63-1, p. 2]. These dates are important.

---

[1] Defendant McNeese's lawyers admit they received the subpoena, but they initially objected to it on the ground that it was "not dated or signed by the Clerk of Court" and was therefore "not properly served." [Doc. 63-2, p. 2]. However, counsel later filed a response specific to the subpoena contents, arguing that the motion was "procedurally moot because it was filed even before the Sheriff's Office's responses were due" and "it seeks documents beyond the scope of discovery in this matter." [Doc. 63, p. 1]. Therefore, the Court considers those arguments for purposes of ruling on the matter now.

2

Federal Rule of Civil Procedure 45 clearly allows nonparties subject to a subpoena an opportunity to file written objections to any and/or all requests for production listed in the subpoena. Specifically, "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). In this matter, Plaintiff filed his Motion to Compel on November 30, 2020. [Doc. 48]. In so doing, he failed to give the Department or Dooly County the full opportunity to file any objections prior to the compliance dates or the 14 day period.

As a procedural matter, Plaintiff's Motion to Compel fails. However, in the interest of ruling on the merits, the Court now considers those substantive arguments presented in Plaintiff's Motion to Compel.

1. **Legal Authority**

First, the Court turns to Federal Rule of Civil Procedure 45—the legal authority allowing a party to obtain discovery from a non-party through the issuance of a subpoena. The scope of discovery permissible under a subpoena mirrors the scope permissible under the general rules of discovery, most notably Federal Rule of Civil Procedure 26. *Bagnato v. Phoebe Putney Health Sys., Inc.*, No. 1:08-CV-2114-JOF-SSC, 2008 WL 11337736, at *5–6 (N.D. Ga. Nov. 13, 2008) (citing cases). Appropriately, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

However, it is important to note that "[a]s indicated by the language of Rule 26, the relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). It makes sense then that "a subpoena that 'sweepingly pursues material with little apparent or likely relevance to the subject matter [] runs the [] risk of being found overbroad and unreasonable.'" *Martin v. De Wafelbakkers LLC*, 1:13-cv-02529-TCB-RGV, 2014 WL 12042549, at *1 (N.D. Ga. Jan. 8, 2014) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996). Therefore, as a general matter, "the party seeking to enforce a subpoena bears the burden of demonstrating that the request is relevant." *Equal Employment Opportunity Comm'n v. Sirdah Enter., Inc.*, No. 1:13-CV-03657-RWS-RGV, 2015 WL 12630686, at *1 (N.D. Ga. Feb. 25, 2015) (citing *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007)). In fact, "[a] district court can deny a motion to compel further discovery if it concludes that the questions are irrelevant." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 732 (11th Cir. 1984)).

As important as relevance is when evaluating subpoenas, courts also consider other factors. "A party or attorney responsible for issuing or serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The non-party opposing the subpoena must

show that compliance presents an undue burden. *Sam v. GA West Gate*, 316 F.R.D. 693, 697 (N.D. Ga. 2016). However, "'non-party status [in and of itself] is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.'" *Aeritas, LLC v. Delta Airlines, Inc.*, No. 1:13-CV-00346-RWS-WEJ, 2013 WL 454452, at *2 (N.D. Ga. Feb. 7, 2013) (citing *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009). In fact, Courts often weigh non-party status against disclosure. *See Martin v. De Wafelbakkers*, LLC, No. 1:13-cv-02529-TCB-RGV, 2014 WL 12042549, at *1 (N.D. Ga. Jan. 8, 2014) (citing *Schaaf v. SmithKline Beecham Corp.*, No. 3:06-CV-120-J-25TEM, WL 2246146, at *2 (M.D. Fla. Aug. 4, 2006)).

Keeping this relevant legal authority in mind, the Court turns to the merits of Plaintiff's Motion to Compel and the objections raised by the Department and Dooly County, Georgia.

    **2.**    <u>**Analysis**</u>

Plaintiff served a subpoena on the Department, attempting to compel it to produce documents evidencing the following:

1) The names and addresses of any and all individuals that you have suspended that person's driver's license between the dates of 01/01/2010 and 11/06/2020.
2) The metadata from the suspension of the driver's license of Albert Robinson on 1/31/2019.
3) Any and all communications between you and any party, entity, and/or agency regarding Albert Robinson.

4) Any and all recordings, texts, and/or any other kind of communications and investigation reports regarding Albert Robinson.
5) The time cards and work records for [the Department ] employee Tiffany Huggins between the dates of 01/01/2019 and 11/11/2020.

[Doc. 48-5, p. 4]. In response, the Department filed an objection to each request for production, specifically arguing that Plaintiff failed to meet his burden in showing such requests were relevant to the claims raised in this action, and that most were overly broad, unduly burdensome and not proportional to the needs of the case. *See generally* [Doc. 52].

Plaintiff also issued an equally-expansive subpoena to the Dooly County Sheriff's Office, requesting the following production of documents:

1) The time sheets for deputy Chase McNeese between the dates of 01/01/2018 to 11/01/2020;
2) The names, addresses and booking information of any and all non-white drivers arrested in Dooly County, GA between the dates of 01/01/2010 and 11/01/2020 for driving while license suspended, and;
3) Any and all records pertaining to Albert Robinson who was arrested by Chase McNeese;
4) Any and all metadata pertaining to the same Albert Robinson listed above, and;
5) The revenue or payment records from any and all arrests of non-white drivers by Dooly County, and;
6) Copes of any and all correspondence between Dooly County employees and any other party pertaining to the same Albert Robinson listed above, include all communications between the state of Florida and it[s] agencies, and
7) Copies of any and all photographs, dash cam video or any other digital device taken by any Dooly [C]ounty employees of the above mentioned Albert Robinson, and;
8) Copies of any and all phone records of Chase McNeese.

[Doc. 48-5, p. 3]. Counsel for Dooly County Sheriff's Office responded in turn, either producing the records they believed to be relevant to the false arrest claim or otherwise indicating when such requests were beyond the scope of permissible discovery.[2] *See* [Doc. 63-2]. Counsel also filed a response to Plaintiff's Motion to Compel, similarly arguing that the majority of the requests for production were not relevant to the claim raised in this action and were also overly broad. [Doc. 63]. Upon review, the Court easily agrees with the subpoenaed nonparties.

In his Motion to Compel, Plaintiff makes it abundantly clear that his requests for production solely arise from an interest in proving that a conspiracy exists between the Department and Dooly County, Georgia to fraudulently arrest and extort money from low-income African Americans. *See* [Doc. 48-1, p. 2 ("The requested documents are directly relevant to Plaintiff's claim that there is a connection between the [Dooly County Sherriff's Office] and the [Department].")]; [Doc. 48-1, p. 4 ("It is not unreasonable to think that the [Department] and [the Dooly County Sheriff's Office] will refuse to surrender any evidence that will confirm the fraud scheme between the two . . .")]; [Doc. 48-1, p. 5 ("[Plaintiff] uncovered a fraud and extortion scheme where it appears the [Dooly County Sherriff's Office] has a mole inside the [Department. . .")];

---

[2] Counsel for Dooly County Sheriff's Office avers that it provided the requested documents to Plaintiff as it relates to any records on Plaintiff, any correspondence between Dooly County employees regarding Plaintiff, and Plaintiff's booking photograph. [Doc. 63, pp. 4–5]; [Doc. 63-2, pp. 3–4].

[Doc. 48-1, p. 7 ("The records that [Plaintiff is] subpoenaing are all connected to proving that the [driving while license suspended] fraud scam indeed exists[.]")].

The Court will say this again—there is no viable claim for conspiracy. *See* [Doc. 42 (dismissing Plaintiff's conspiracy claim for failure to state a claim).]. The Court has been extremely clear in its prior Orders that the only surviving claim in this action is one for an allegedly false arrest on June 25, 2019. *See* [Doc. 44]; [Doc. 55]. Further, the Court limited discovery in this case to the sole legal issue of whether qualified immunity applies to the arresting officer—Defendant McNeese. *See* [Doc. 42]; [Doc. 55].[3] However, as laid out in great detail above, Plaintiff openly admits that these requested documents have nothing to do with qualified immunity. This position is made abundantly clear given the broad scope and irrelevant subject matter of the vast majority, if not all, of his requests.[4]

---

[3] In the interest of being abundantly clear, the Court will once again correct any misconceived notions regarding the scope of this action. In his Motion to Compel, Plaintiff blatantly mischaracterizes the Court's earlier rulings: "This Court has given me sixty (60) days in which to basically prove that the [the Department] and [Dooly County Sherriff's Office] are running a scam to arrest African-American drivers for [driving while license suspended]." [Doc. 48-1, p. 4]. Absolutely untrue. The Court allowed both parties 60 days to conduct discovery as to the sole issue of whether qualified immunity applies to Defendant McNeese—and that's it. Discovery must deal with the issue of qualified immunity and is expressly forbidden to deal with issues and claims not in the case, specifically some alleged conspiracy between a Florida state-government bureaucracy and Dooly County.

[4] For example, as to the subpoena issued against the Department, Plaintiff's first request for production seeks nearly ten years of records as to the names and addresses of any individual cited by the Department as having a suspended driver's license. [Doc. 48-5, p. 4].

Plaintiff failed to sufficiently show the Court how *any* of his requests are related to the sole issue allowed under the Court's discovery order – qualified immunity. Consequentially, Plaintiff's Motion to Compel is **DENIED**. [5]

### B.    Plaintiff's Second Motion to Compel (filed January 6, 2021)

While the docket refers to this filing as "Plaintiff's Motion to Compel," the Court notes that this Motion contained much more than a standard motion to compel. [Doc. 69]. Plaintiff actually stuffed four motions into this single filing: (1) Plaintiff's Motion to Compel; (2) Plaintiff's Motion for Rule 60 Relief; (3) Plaintiff's Motion for an Extension of Time for Discovery; and (4) Plaintiff's Motion for Judicial Notice. *See* [*id.*].

In support of all four motions, Plaintiff provides a detailed background once again outlining his belief that some sort of a conspiracy exists between the Department and Dooly County to "generate millions of dollars in traffic revenue[]" by falsely suspending "nearly 1,000,000 driver's licenses for various non-driving related matters[,] such as child support." [Doc. 69-1, pp. 7–9]. The Court has repeatedly informed Plaintiff that this present action only involves a *singular* claim of false arrest against a *singular* defendant so that these conspiracy allegations cannot possibly serve as "the basis of [Plaintiff's] case." [*Id.* at p. 9]. Undeterred, Plaintiff stubbornly continues to ignore the

---

[5] Even if the subpoenas were tangentially related to the limited discovery issues, the Court would deny them as being extraordinarily expansive, overbroad and unduly burdensome to the nonparties.

Court's plain rulings and argues otherwise. Therefore, the Court considers this background when issuing its rulings on the following motions.

### 1. Plaintiff's Motion to Compel against Defendant McNeese

Plaintiff moves to compel discovery against Defendant McNeese based on the allegation that he, and a litany of other individuals, "are now attempting to stonewall discovery until the sixty (60) day time limit runs out thus concealing the extortion and obstructing justice." [Doc. 69-1, p. 6]. As the Court noted in its earlier analysis, it has the inherent authority to deny a motion to compel discovery upon finding the discovery requests to be irrelevant to the claim at issue in the action. *See Burger King Corp.*, 169 F.3d at 1320. It appears that once again, such authority is warranted here.

Plaintiff again asks the Court to compel discovery on grounds completely unrelated to the only issue that the Court allowed for discovery. In fact, Plaintiff states the following:

> [t]he Court must therefore order [Defendant McNeese] to provide the records because the records that [Plaintiff is] requesting from [him] are all connected to proving how the [Dooly County Sherriff's Office]-[Department] [driving while license suspended] extortion scam works, that Co-Defendants [the Department] and [Dooly County] were all instrumental in the scam and that they extorted money from me in violation of the Hobbs Act.

[Doc. 69-1, pp. 11–12]. Upon review of the requests for production sent to Defendant McNeese, the Court easily concludes that the overwhelming majority of his requests center on Plaintiff's continued allegations of a decade-long conspiracy between

dismissed parties. *See* [Doc. 69-3, pp. 14–18]. Most of the requests for production are extraordinarily broad in both scope and time, and irrelevant to the only remaining claim.

In situations like this, some courts have found "[w]hen the relevancy of a discovery request is *not* apparent on the face of the request, then the party seeking the discovery has the burden to show its relevancy." *Bunch v. Pacific Cycle, Inc.*, No. 4:13-CV-0036-HLM, 2013 WL 12090114, at *6 (N.D. Ga. July 26, 2013) (quoting *Southard v. State Farm Fire & Cas. Co.*, No. CV411-243, 2012 WL 2191651, at *2 (S.D. Ga. June 14, 2012)). The Court agrees, noting the importance of the relevancy analysis regarding these types of motions. In this action, most of Plaintiff's requests are simply not relevant to the false arrest claim against Defendant McNeese. And, for those few requests for production that are relevant to the claim at issue, the Court finds that Defendant McNeese appropriately produced such documents.[6] Therefore, Plaintiff's second Motion to Compel is **DENIED**.[7]

---

[6] Plaintiff also admits that Defendant McNeese responded to four of the requests for production by submitting documentation. [Doc. 69-1, p. 10].

[7] In Plaintiff's Motion to Compel, he also moves for "eyepopping" sanctions against Defendant McNeese's counsel for allegedly abusing the discovery process. [Doc. 69-1, p. 12]. However, Plaintiff has failed to make a sufficient showing of such abuse. In fact, as it appears, *he* was the one who failed to tailor his requests for production in such a way as to fall within the Rule 26(b)(1) scope of discovery. Therefore, any such request for sanctions is similarly **DENIED** for the reasons discussed above.

### 2. Plaintiff's Motion for Rule 60 Relief & Plaintiff's Motion for an Extension of Time for Discovery

In his Motion for Rule 60 Relief, it appears that Plaintiff once again takes issue with the Court's ruling to dismiss his conspiracy claim.[8] More specifically, Plaintiff argues that "the Court abused its discretion by restricting [his] discovery requests to the issue of [qualified immunity], only when there are other issues still in litigation such as [Defendant McNeese, Dooly County, and the Department's] parts in the scam." [Doc. 69-1, p. 14]. But, as the Court has tirelessly repeated—there are no such issues remaining in this action. The Court laid out its reasoning in detail when it dismissed these claims. *See* [Doc. 42]. And, similarly, the Court dismissed the Department and Dooly County, Georgia based upon Plaintiff's failure to timely effectuate service.[9] Thus, the Court appropriately limited discovery to the only remaining issue in this action. *See Jenkins v. Campbell*, 200 F.R.D. 498, 501 (M.D. Ga. 2001) ("The most important concept to glean from a close reading of the current discovery rules is that parties are to engage in discovery only as to matters relevant to or otherwise helpful to the case."). Therefore, Plaintiff's Motion for Rule 60 Relief is **DENIED**.

---

[8] Plaintiff previously moved the Court to reconsider its ruling as to the dismissal of formerly-named defendants and claims. *See* [Doc. 54]. The Court denied reconsideration, and firmly stood by its analysis in support of why certain claims and parties were dismissed in its original Order [Doc. 42]. *See* [Doc. 55].

[9] The Court issued an Order to Show Cause [Doc. 41] as to why the Department, Dooly County, Georgia, and other formerly-named defendants, should not be dismissed from this action for failure to timely perfect service. Plaintiff responded to this Order, stating that he "declin[ed] the offer to show cause" and that "the best course of action that [he has] is to let them be dismissed from the case so that [he] can refile against them later[.]" [Doc. 43, p. 1].

Plaintiff also moved to extend the discovery period, arguing that he acted diligently by serving his discovery requests, but then opposing counsel "acted in a dilatory manner disregarding [him.]" [Doc. 69-1, p. 17]. As a general matter, the Court ordered the parties to conduct discovery within a 60-day time period, limited to the sole issue of whether qualified immunity applies. [Doc. 42, p. 30.]. The party requesting an extension for discovery must establish good cause by showing that discovery could not be completed despite that party's diligence. *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008); *Ashmore v. Sec'y Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013). Plaintiff has failed to show such diligence. Throughout the discovery period, Plaintiff filed subpoenas, motions, and other documents relating to his failed conspiracy theory against formerly-named defendants. He repeatedly ignored Court orders to limit discovery to the sole issue remaining in this action. *See* [Doc. 42]; [Doc. 55]. Plaintiff chose to use the discovery period to pursue irrelevant matters. He should have followed the Court's order and focused his discovery on the issue that the Court identified. He can only blame himself if he has run out of time. As a result, Plaintiff's Motion for an Extension of Time for Discovery is **DENIED**. [Doc. 69-1].[10]

---

[10] Furthermore, Plaintiff fails to show how opposing counsel acted in a "dilatory manner." [Doc. 69-1, p. 16]. Rather, he makes allegations that opposing counsel returned "useless responses" to his discovery requests "so that they would reach the Plaintiff on late." [*Id.* at p. 17]. However, the Court has already noted that Defendant McNeese appropriately responded to the discovery requests in a timely manner and produced documentation believed to be relevant to the remaining issue in this action. Therefore, the Court finds this argument unpersuasive as a basis for extending discovery.

13

### 3. Plaintiff's Motion to Take Judicial Notice

Lastly, buried within this pleading, Plaintiff moved the Court to take judicial notice of a series of "documents, orders, filings, newspaper articles, records, and things[]" that he included as "Exhibit Appendix A." [Doc. 69-1, p. 18].

"A district court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either (1) 'generally known within the trial court's territorial jurisdiction' or (2) 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Grayson v. Warden, Comm'r, Ala. Doc*, 869 F.3d 1204, 1224–25 (11th Cir. 2017) (quoting Fed. R. Evid. 201(b)). "Adjudicative facts are facts that are relevant to a determination of the claims presented in a case." *Dippin' Dots, Inc. v. Frosty Bites Distrib.*, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004). As a result, "[a] court may thus refuse to take judicial notice of facts that are irrelevant to the proceeding[.]" *Martincek v. LVNV Funding, LLC*, NO. 1:16-CV-03587-ELR-JFK, 2017 WL 2903356, at *2 (N.D. Ga. Mar. 16, 2017) (King, Mag. J.) (quoting *Ballard v. Bank of America Corp.*, No. 1:13-cv-04011-ODE-RGV, 2014 WL 11970543, at *7 (N.D. Ga. Sept. 11, 2014)). "[T]he taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997). Therefore, courts are cautious when doing so, as "the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Id.*

Given such considerations, Plaintiff has failed to show how the Court's exercise of judicial notice as to those documents included within "Exhibit Appendix A" would be appropriate in this matter. Rather than offer any explanation as to the relevance of these documents on the limited issue of qualified immunity, Plaintiff merely argues that they "are properly the subject of judicial notice as they are readily available from state and federal sources and will move the case forward . . ."[Doc. 69-1, p. 19].

As the Court has reiterated early and often, the only relevant issue remaining is whether Defendant McNeese is entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, any fact that Plaintiff would have the Court judicially notice must pertain to whether Defendant McNeese violated a constitutional right (falsely arresting him) and whether that right was clearly established at the time of the alleged violation." *Anderson v. City of Naples*, 501 F. App'x 910, 916 (11th Cir. 2020) (citing *McCullough v. Antolini*, 559 F.3d 1202, 1205 (11th Cir. 2009)). Since Plaintiff fails to proffer any reason as to how his judicial-notice requests relate to the issue of qualified immunity, Plaintiff's Motion for Judicial Notice is **DENIED**.

    **C.**    **Plaintiff's Motion for Sanctions**

Plaintiff brings his Motion for Sanctions [Doc. 67] against several individuals "for fraud pursuant to 28 [U.S.C. § 1927] and the Court['s] inherent powers." [Doc. 67, p. 1].[11] Once again, in support of his Motion, Plaintiff presents a background comprised almost entirely of his previously-dismissed conspiracy allegations. However, he also alleges new facts concerning a "subsequent scheme" perpetrated by "Defendant [Dooly County, Georgia], by way of its employee [Randy Lambert], and its attorneys [Wesley C. Jackson] and [Sun Choy]" to threaten Plaintiff with arrest for forgery. [Doc. 67-1, p. 5]. These facts appear to serve as the basis for Plaintiff's Motion for Sanctions.

In brief summation, Plaintiff claims to have paid Macon County Sherriff's Office (via money order) to effectuate service on Defendant McNeese for purposes of proceeding in this action. [*Id.*].[12] However, Plaintiff claims that the money order was returned. [*Id.*]. Thereafter, he crossed out the original writing on the money order and wrote in new information as to the payee. [*Id.* at p. 6]. He claims to have sent this money order to the Dooly County Sheriff's Office for service. [*Id.*]. After some time, he

---

[11] To be exact, Plaintiff alleges the following as the basis for his Motion:
> Accordingly, [Plaintiff] hereby move[s] the Court to impose sanctions pursuant to [Federal Rule of Civil Procedure] 11 against Defendants Jonathan Chase McNeese ("JCM"), and Dooly County, Georgia ("DC") and 28 U.S. Code § 1927 –Counsel's liability for excessive costs against the attorneys of record Wesley Calvin Jackson ("WCJ") and Sun S. Choy ("SC"), and their managing law firm partners Theodore Freeman ("TF"), Benton J. Mathis, Jr. ("BM"), T. Bart Gary ("TG"), and DC employee Randy Lambert ("RL") as co-conspirator.

[Doc. 67-1, p. 3].

[12] As a procedural matter, Defendant McNeese waived service of summons in this action. *See* [Doc. 4].

16

allegedly contacted Dooly County Sheriff's Office to inquire as to "why the [money order] was not used to serve [Dooly County, Georgia]." [*Id*. at p. 7]. Plaintiff claims that a Dooly County employee, Randy Lambert, answered his call and then "stated[] with glee, that the [money order] was forged and that that is why the [money order] was not used to serve [Dooly County]." [*Id*.]. Based on this single phone call, Plaintiff contends that this employee informed him that the money could not be used for payment as it was "forged." [*Id*.]. From this alleged third-party statement, Plaintiff now claims that "it looks like [Randy Lambert], acting under [Dooly County's] orders and in conjunction and under advisement from [Wesley C. Jackson] and [Sun Choy] is attempting to falsely arrest me for forging a valid [money order] by correcting the name[.]" [*Id.* at p. 8]. As a result, Plaintiff argues that such "acts of witness intimidation should be sanctioned under the inherent powers of the Court." [*Id.* at p. 11].

It is true that "'[c]ourts have the inherent power to police those appearing before them.'" *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018) (quoting *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 1998)). Such inherent power allows the Court to order appropriate sanctions when conduct occurs that abuses the judicial process. *Id.* However, this inherent power must be "exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). So, before issuing any such sanction pursuant to its inherent authority, "[the Court] must make a

17

finding that the sanctioned party acted with subjective bad faith."[13] *Hernandez*, 898 F.3d at 1306. "This standard can be met either (1) with direct evidence of the attorney's subjective bad faith or (2) with evidence of conduct 'so egregious that it could only be committed in bad faith.'" *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (quoting *Purchasing Power*, 851 F.3d at 1224–25. For purposes of ruling on this Motion, the important aspect of this standard is that it requires the moving party to provide *evidence* in support of any bad faith allegations. Here, Plaintiff fails to do so.

Rather, in his Motion, Plaintiff merely lobs various unsubstantiated theories of fraud, hoping one may ultimately stick.[14] In an attempt to support such theories, he references a letter that *he drafted* and sent to Randy Lambert, whereby he states that a

---

[13] The Court also notes that Plaintiff moved for sanctions under 28 U.S.C § 1927 against opposing counsel. [Doc. 67-1, p. 16]. Under this statute, and in the Eleventh Circuit, the party moving for sanctions must show *objective* bad faith on the other party. *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). To be exact, "[t]o justify an award of sanctions pursuant to [§ 1927], an attorney must engage in unreasonable and vexatious conduct; this conduct must multiple the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quoting *Schwartz v. Milon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)). Apparently, Plaintiff alleges that opposing counsel for Defendant McNeese violated this statute by "enter[ing] numerous frivolous defenses" in his "Rule 12 motion to dismiss." [Doc. 67-1, p. 17]. Plaintiff then alleges his claims survived this dismissal motion, and since then, opposing counsel's continual representation of Defendant McNeese is done in violation of 28 U.S.C § 1927. [*Id.* at pp. 16–18]. Plaintiff has failed to show how Defendant McNeese's counsel multiplied the pleadings in this action. In fact, Defendant McNeese's Motion to Dismiss [Doc. 12] was granted in part. *See* [Doc. 42]. The Court has reviewed Plaintiff's argument and finds it meritless. Therefore, his Motion for Sanctions under 28 U.S.C § 1927 is **DENIED**.

[14] Plaintiff phrases many of his fraud allegations as mere musings or guesses as to what he believes may be occurring in this case. *See* [Doc. 67-1, p. 8 ("In the least it looks like [Randy Lambert] made the false claim so that [Dooly County, Georgia] could evade service. In the most it looks like [Randy Lambert], acting under [Dooly County's] orders and in conjunction an under advisement from [Wesley C. Jackson] and [Sun Choy] . . .")]; [Doc. 67-1, p. 11 ("Here it seems that [Wesley C. Jackson is stalling the case until [Randy Lambert] can falsely arrest me for the alleged forged [money order].")]

non-party may have suggested that he committed forgery.[15] Presently, Plaintiff has failed to show any actual evidence of bad faith[16], and therefore, his Motion for Sanction on this ground is **DENIED**.[17]

## **CONCLUSION**

For the reasons discussed herein, the Court **DENIES** the following: (1) Plaintiff's Motion to Compel Compliance with Subpoenas for Production of Documents and Things [Doc. 48]; (2) Plaintiff's Motion for Sanctions [Doc. 67]; and (3) Plaintiff's second Motion to Compel [Doc. 69].

---

[15] *See* [Doc. 66, p. 1 ("I feel strongly that you are inferring that the money order that I sent to you to serve Dooly County, Georgia was forged and that you are opening an investigation.")]' [Doc. 66, p. 2 ("Either you intentionally refused to serve Dooly [County, Georgia] and claimed that the money order was forged but never told me sot that the [United States District Judge] would dismiss Dooly [County, Georgia] from the case for non-service prior to deadline, or, you are putting together a case to arrest me for a forged money that . . .")].

[16] In his Motion for Sanctions, Plaintiff cites caselaw for the proposition that a finding of bad faith is warranted "where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." [Doc. 67-1, p. 11 (citing *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008))]. The Court has reviewed the record and cannot find any evidence of bad faith on the part of Defendant McNeese's lawyers to warrant sanctions.

[17] The Court notes that Plaintiff also moved for sanctions against opposing counsel under 18 U.S.C. §§ 242 and 1512. [Doc. 67-1, pp. 1–2]. However, these are both criminal statutes that do not create a private right of action. *See Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1327 (N.D. Ga. Aug. 18, 2009) ("Sections 241 and 242 are criminal statutes, and they do not provide a private right of action."); *Baker v. City of Hollywood*, No. 08-cv-60294, 2008 WL 2474665, at *9 (S.D. Fla. June 17, 2008), *aff'd*, 391 F. App'x 819 (11th Cir. 2010)("Nothing in 18 U.S.C. § 1512 suggests that it creates a private right of action."). Thus, any request for sanctions under these statutes are also **DENIED.**

**SO ORDERED**, this 22nd day of January, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
