# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| **ALBERT ROBINSON,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:20-cv-00160-TES** |
| **JONATHAN CHASE MCNEESE,** | |
| *Defendant.* | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Albert Robinson ("Plaintiff") filed this action under 42 U.S.C. § 1983 against six defendants, alleging, *inter alia*, that they engaged in a vast and wide-ranging conspiracy to deprive him of his civil rights by falsely arresting and detaining him with the sole design to prevent him from appearing/testifying at a court hearing where he could have exposed multiple wrongdoings hatched in the Florida state government. *See* [Doc. 8]. However, since that filing, numerous court rulings have limited this civil rights action to a singular claim against a singular defendant. *See* [Doc. 42]; [Doc. 44]. Specifically, the sole surviving claim in this action pertains to an allegedly false arrest

on June 26, 2019[1] by Dooly County deputy sheriff Jonathan Chase McNeese

("Defendant McNeese"). Related to that singular count, Plaintiff alleges that Defendant

McNeese violated his Fourth Amendment rights when he unlawfully arrested him for

the offense of driving while license suspended, in violation of O.C.G.A. § 40-5-121.

[Doc. 8, ¶¶ 52–74]. Plaintiff contends that Defendant McNeese lacked probable cause to

effectuate the arrest. [*Id.* at ¶¶ 69–70]. In response, Defendant McNeese asserts the

doctrine of qualified immunity, arguing that he had both actual and arguable probable

cause to arrest Plaintiff for violating the aforementioned Georgia statute. [Doc. 70];

[Doc. 71].

This action is now before the Court on Plaintiff's Motion for Partial Summary

Judgment [Doc. 62] and Defendant McNeese's Motion for Summary Judgment [Doc.

71]. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Partial

Summary Judgment [Doc. 62] and **GRANTS** Defendant's Motion for Summary

Judgment [Doc. 71].

---

[1] In his Amended Complaint [Doc. 8], Plaintiff repeatedly states that the allegedly false arrest occurred in Dooly County, Georgia on *June 25, 2019*. [Doc. 8, ¶¶ 16–18, 20, 52, 88, 90]. However, it appears that both parties now contend that the allegedly false arrest occurred on *June 26, 2019*. [Doc. 62, p. 6] [Doc. 62-2, ¶ 3]; [Doc. 71-1, p. 3]. This difference in date does not affect the Court's ultimate resolution of the pending motions for summary judgment. However, since this date differs from the one stated in prior orders, the Court felt it necessary to explain the discrepancy.

# FACTUAL BACKGROUND

The following facts are undisputed.[2] On June 26, 2019, at approximately 10:18

---

[2] First, forgive this lengthy footnote.

Both parties have moved for summary judgment, and both parties have submitted statements of material facts to which they contend no genuine issue of fact exists. [Doc. 62-2]; [Doc. 71-2]. For purposes of presenting the factual background of this action, the Court will consider both statements only to the extent that they comply with the Local Rules for the Middle District of Georgia. Specifically, the Court turns its attention to Local Rule 56, which governs motions for summary judgment. Upon review of Plaintiff's statement of material facts, the Court concludes that Plaintiff did not comply with those procedural mandates imposed by Local Rule 56. For example, Local Rule 56 requires the party moving for summary judgment to set forth for each material fact listed a "specific citation to particular parts of materials in the record." LR 56, MDGa. Failure to comply with this mandate has serious consequences. In fact, Local Rule 56 is quite clear when it states that "[m]aterial facts not supported by specific citation to particular parts of materials in the record . . . will not be considered by the court." *Id.* As it relates to this action, Plaintiff asserts 21 material facts, but only includes record citations for 15 of those facts. *See* [Doc. 62-2]. Thus, the Court will not consider those facts without record citation. *See* [*id.* at ¶¶ 3, 14–16, 19, 20]. Furthermore, the Court must note that even when a material fact includes a citation to the record, that citation does not necessarily support the fact asserted. As an example, for one of his material facts, Plaintiff states that the Court ruled that Defendant McNeese "was not protected by any 11th Amendment qualified immunity because [he] violated the law by arresting [Plaintiff.]" [Doc. 62-2, ¶ 13]. Plaintiff supports this "fact" by citing to a prior Order [Doc. 42] in this action, whereby the Court (among other things) dismissed all claims asserted against Defendant McNeese except for the allegedly false arrest claim arising under 42 U.S.C. 1983. *See generally* [Doc. 42]. However, nowhere in that Order, did the Court definitively rule that Defendant McNeese violated any law, and consequentially, would then be stripped of his qualified immunity defense in its entirety. And the Court has made this point very clear to Plaintiff, as this is not the first time that he has asserted such a falsehood as fact in a motion. *See* [Doc. 46-1]; [Doc. 54]; [Doc. 58]; [Doc. 59-1]; [Doc. 67-1]; [Doc. 69-2]. The Court, in consideration of Plaintiff's *pro se* status, has repeatedly tried to correct Plaintiff's blatant mischaracterization of the ruling in that Order in an effort to allow Plaintiff the opportunity to fully pursue the sole surviving claim in this action—the allegedly false arrest. However, upon review of Plaintiff's statement of material facts, it appears that such an effort has been in vain as Plaintiff stubbornly continues to assert that the Court ruled in his favor. As a result, the Court will not consider such blatant and intentional mischaracterizations of its Orders.

Within this analysis, it is also appropriate for the Court to address Plaintiff's Response [Doc. 81] to Defendant McNeese's statement of material facts, since Plaintiff appears to suggest that a genuine dispute exists as to each one. *See generally* [Doc. 81]. To illustrate, Plaintiff now appears to suggest that a question of fact exists as to whether he was the actual individual arrested by Defendant McNeese on June 26, 2019 for driving while license suspended. [*Id.* at pp. 4–7]. Specifically, in response to Defendant McNeese's material fact that he initiated a traffic stop of a 2005 Ford Explorer driven by Plaintiff on June 26, 2019, Plaintiff states that this fact is "questionable and unlikely[.]" [Doc. 81, p. 5]. Plaintiff now argues that another person with his same name could have been pulled over on that date. *See* [*id.* at p. 6 ("[The genuine issue of material fact] is the number of Albert Robinsons in the U.S. which (*sic*) number is

3

p.m., Defendant McNeese, a deputy sheriff employed by Dooly County Sheriff's Office,

initiated a traffic stop along Georgia Highway 401 after he observed a 2005 Ford

Explorer fail to maintain its lane. [Doc. 71-2, ¶¶ 6–7]. Plaintiff was driving the Ford

Explorer. [*Id.* at ¶ 8]. During this traffic stop, Plaintiff presented his Texas driver's

license to Defendant McNeese. [*Id.* at ¶ 9]. Defendant McNeese then asked Plaintiff

whether he had ever held a license issued by another state. [*Id.*]. In response, Plaintiff

---

staggering. Just for argument there are 176 Albert Robinsons in the state of Florida, according to True People Search[.]")]. Think about that. Plaintiff filed this action for an allegedly false arrest, yet doesn't concede that he was actually the one arrested. In legal terms, this makes no sense.

But there are more problems. The Court spent considerable time reviewing Plaintiff's Response to Defendant McNeese's statement of material facts and his supposed citations to materials in the record that purportedly support there being a genuine dispute to be tried. Simply put, his responses (as exampled above) most certainly do not raise legitimate issues of material fact central to the actual dispute concerning this action. Therefore, the Court must deem Defendant McNeese's statement of material facts as admitted since Plaintiff has failed to specifically controvert them by specific citation to particular parts of the record." LR 56, MDGa; *see, e.g., Jones v. Gerwens*, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) (noting how "[f]acts set forth in the Defendant's Statement of Undisputed Facts which are not controverted, are deemed admitted . . ."). Once again, while the Court reviewed Plaintiff's statement of material facts and his responses to Defendant McNeese's statement in detail, it only considered them to the extent that they complied with Local Rule 56.

informed Defendant McNeese that he had held a Florida driver's license. [*Id.*].[3]

After this interaction, Defendant McNeese radioed dispatcher Lisa Bartlett to request that she submit a query to the Georgia Crime Information Center/National Crime Information Center system with Plaintiff's name and date of birth. [*Id.* at ¶ 10–11]. In this request, Defendant McNeese also sought any information specific to the state of Florida. [*Id.* at ¶ 10]. Lisa Bartlett submitted the query. [*Id.* at ¶ 11]. After doing so, a response issued by the Florida Department of Driver's Licenses/Department of Highway Safety and Motor Vehicles (the "Department") showed a suspension on Plaintiff's driving record entered on January 31, 2019.[4] [*Id.* at ¶ 12]. Lisa Bartlett then informed Defendant McNeese that Plaintiff's driving privileges had been suspended by

---

[3] Plaintiff disputes that he told Defendant McNeese that he once held a Florida driver's license. [Doc. 81, p. 8 ("Plaintiff never had a Florida license and surely did not tell [Defendant McNeese] that he did.")]. Despite Plaintiff's argument to the contrary, this question of fact is not "material" to resolve the issue presented in this action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). As discussed below, it does not matter whether Plaintiff in fact had a Florida driver's license. While Defendant McNeese certainly submitted evidence showing that the state of Florida administratively suspended Plaintiff's license (if there ever was one) due to a lack of documented insurance coverage on his vehicle, , what really matters is the information that Defendant McNeese knew at the time he arrested Plaintiff. *See generally* [Doc. 70-4]; [Doc. 70-6]. And, Defendant McNeese offers evidence showing that a database search performed at the time of the arrest informed him that the state of Florida had suspended Plaintiff's driving privileges. This information is what is material to the issue of whether Defendant McNeese had arguable probable cause to arrest Plaintiff, and whether qualified immunity ultimately protects him from suit.

[4] The response issued by the Florida Department of Driver's Licenses/Department of Highway Safety and Motor Vehicles (the "Department") showed the following regarding Plaintiff's suspended driving privileges: "FR-Susp Non-Judgment Suspension." [Doc. 71-2, ¶ 12].

the state of Florida. [*Id.* at ¶ 13]. Relying upon this information, Defendant McNeese

arrested Plaintiff for the offense of driving while license suspended or revoked, in

violation of O.C.G.A. § 40-5-121.[5] [*Id.* at ¶ 14].

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)

(quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991));

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears

---

[5] Defendant McNeese provided affidavit testimony regarding the validity of the license suspension. *See* [Doc. 70-5]. The affidavit avers that Plaintiff was required under Florida law to maintain certain insurance coverage on a vehicle that he had registered with the Department. [*Id.* at ¶¶ 3–4]. An insurance company contacted the Department, notifying it that Plaintiff's insurance had been canceled on December 20, 2018. [*Id.* at ¶ 4]. In response to this information, the Department suspended Plaintiff's driving privileges effective January 31, 2019. [*Id.* at ¶ 5]. While the Court can understand Defendant McNeese's interest in offering such evidence, this does not necessarily mean the information is material to the ultimate issue in this action. Specifically, Defendant McNeese moves for summary judgment on the basis that he had actual and arguable probable cause to arrest Plaintiff. "The Eleventh Circuit has instructed that in determining whether probable cause existed to arrest, the Court must consider the facts available to the arresting officer at the moment of arrest." *Gainor v. Douglas Cnty., Ga.*, 59 F. Supp. 2d 1259, 1280 (N.D. Ga. Sept. 20, 1998) (citing *United States v. Allison*, 953 F.2d 1346, 1349 (11th Cir. 1992)). Therefore, the Court must consider only those facts available to Defendant McNeese at the time he arrested Plaintiff, not those facts that he learned afterwards. Therefore, since it is not apparent from the record that this background information regarding Plaintiff's suspension was available to Defendant McNeese at the time of the arrest, the Court will not consider it in its analysis as to whether actual or arguable probable cause existed.

the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 324). Alternatively, a movant may prevail on a motion for summary judgment by showing that the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

In this action, Plaintiff filed his Motion for Partial Summary Judgment on December 21, 2020, and Defendant McNeese, in turn, filed a cross-motion for summary judgment after the close of discovery. [Doc. 62]; [Doc. 71]. As an initial matter, "[t]he standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,

972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)); *see United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Therefore, the Court will consider the merits of each motion, resolving all reasonable inferences against the party whose motion is under consideration. *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331. That said, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### B.     Qualified Immunity Standard

Plaintiff alleges that Defendant McNeese violated his constitutional rights when he falsely arrested him for driving while license suspended, in violation of O.C.G.A. § 40-5-121. [Doc. 8, ¶¶ 52–74]. The crux of Plaintiff's argument centers on his contention that he held a valid driver's license (issued by the state of Texas) when operating his vehicle on the date of the alleged false arrest. [*Id.* at ¶¶ 66–69]; [Doc. 62-1, pp. 2–5]. More specifically, Plaintiff argues that since he held a valid license from Texas, records[6] purporting to show his driving privileges to be suspended by the state of Florida do not negate the validity of his license, nor legally justify his arrest for the offense of driving while license suspended. Further, Plaintiff contends that Defendant McNeese *knew*

---

[6] Plaintiff argues that any records evidencing his license to be suspended have been fabricated by the Department. *See generally* [Doc. 8]; [Doc. 62-1].

Plaintiff's Texas license to be valid at the time of the arrest, but he simply disregarded its validity in the interest of arresting Plaintiff. [*Id.* at ¶ 32]. In legal terms, Plaintiff's claim is that Defendant McNeese violated his Fourth Amendment rights when he conducted a warrantless arrest without probable cause. [*Id.* at ¶¶ 58, 60–61, 65, 70–71].

In response, Defendant McNeese asserts that he had actual probable cause to arrest Plaintiff, and even if he did not, he is entitled to qualified immunity because he had at least arguable probable cause to arrest him. *See generally* [Doc. 70]; [Doc. 71]. Therefore, if Defendant McNeese is correct that he had at least arguable probable cause to conduct the arrest, he would be entitled to qualified immunity and immune from further suit arising from this claim. *See Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018) ("Qualified immunity is total immunity from suit, rather than a defense to a particular change."). Appropriately then, the Court lays out the framework governing the application of qualified immunity before turning to the question of whether Defendant McNeese is protected by it.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine is intended to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . protecting from

9

suit all but the plainly incompetent or one who is knowingly violating federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citations omitted). To determine whether a defendant is entitled to the doctrine of qualified immunity, the Court considers a two-step burden-shifting analysis:

> the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred . . . . Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.

*Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010) (quoting *Lee*, 284 F.3d at 1194). As required by this framework, Defendant McNeese must first prove that he was engaging in a discretionary function at the time of the alleged wrongful action. He very easily satisfies his burden as to this point.

Defendant McNeese argues that "[a]n officer who conducts a traffic stop is engaging in a discretionary function and may assert qualified immunity." [Doc. 71-1, p. 5 (citing *Hankins v. Davis,* No. 1:13-CV-01365-RWS, 2015 WL 71437, at *8 (N.D. Ga. Jan. 5, 2015))]. Whether an official was engaged in a discretionary function turns on whether the acts the official undertook "are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004); *see also Holmes v. Georgia ex rel. Strickland*, 503 F. App'x 870, 874 (11th Cir. 2013) ("Regarding discretionary functions, the inquiry concerns whether the acts in question are of a type that fell within the defendant's job responsibilities, and asks whether the

defendant was performing a legitimate job-related function through means that were within his or her power to utilize."). Upon review of the applicable law and argument, the Court easily concludes that Defendant McNeese, serving in his role as a deputy sheriff, performed a legitimate job-related function when he arrested an individual upon observing him commit a misdemeanor offense.[7] *See, e.g.*, *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (discussing how it was clear that a state trooper was acting within the scope of his discretionary authority when he charged and arrested a suspect).

Since Defendant McNeese has shown that he acted within the scope of his discretionary authority when the alleged wrongful act occurred, "the burden shifts to [Plaintiff] to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. To show this, Plaintiff now bears the burden to show that (1) Defendant McNeese's conduct violated a statutory or constitutional right and (2) the unlawfulness of his conduct was "clearly established at the time of the challenged conduct." *Reichle v. Howards*, 556 U.S. 658, 664 (2012). Similarly, Plaintiff must present examples of

---

[7] Plaintiff argues that Defendant McNeese was not acting within his discretionary authority when he arrested him for driving while license suspended because he was "extorting money from a motorist arrested based on false fabricated [Florida driver's license] suspension information sent over the internet by a[] [Department] employee[.]" [Doc. 81-2, ¶¶ 95–96 ]. However, for purposes of conducting the discretionary function analysis, "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but rather "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted). Plaintiff fails to show how an arrest, if done for a proper purpose, would not be related to a deputy's discretionary duties. In fact, based on the applicable case law, an arrest clearly falls within such duties. *See, e.g.*, *Manners v. Cannella*, 891 F.3d 959, 967–68 (11th Cir. 2018) ("There is no dispute that the officers were acting within their discretionary authority when they conducted a traffic stop and later arrested [the plaintiff].").

"preexisting law [that] make[s] it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

Having presented the relevant factual and legal background by which to analyze this action, the Court now considers the merits of each party's motion for summary judgment. Appropriately, both parties' arguments and analysis should largely discuss the doctrine of qualified immunity.

### C.    Plaintiff's Motion for Partial Summary Judgment

The Court first considers the question of whether Plaintiff sufficiently alleged a violation of his statutory or constitutional rights. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) ("The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."). Plaintiff claims that Defendant McNeese violated his clearly established Fourth Amendment right to be free from unlawful search and seizure when he arrested him without probable cause. As a starting point, the Court clearly recognizes that "[a] warrantless arrest without probable cause violates the Fourth Amendment and provides the basis for a § 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). It necessarily follows that "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Then, assuming Plaintiff shows a violation of his constitutional

right, he must identify precedent from the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court, whereby "an officer acting under similar circumstances as [Defendant McNeese] was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). Identification of such precedent assists in analyzing whether a right is clearly established at the time of the alleged violation. "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (citation omitted).

Curiously, Plaintiff moves for summary judgment without addressing any of this analysis. Instead, he once again inaccurately asserts that the doctrine of qualified immunity does not apply in this case because "[t]he Court has already ruled that Defendant [McNeese] violated the law[.]" [Doc. 62-1, p. 10]. The Court has dealt with this blatantly false assertion time and time again when ruling on Plaintiff's many motions. However, despite repeated efforts by the Court to correct Plaintiff's

misconceived notions on this matter, it appears that such efforts have been ignored. *See*

[Doc. 42][8]; [Doc. 55]; [Doc. 61]; [Doc. 74][9]; [Doc. 75].

While most of Plaintiff's argument should have focused on presenting relevant

law and facts to overcome the doctrine of qualified immunity, Plaintiff fails to offer

much in terms of substantive analysis. In fact, this is the entirety of Plaintiff's analysis

on the issue of qualified immunity as it relates to Defendant McNeese:

> The Court has already ruled that [Defendant McNeese] falsely arrested me
> for [driving while license suspended] but left the issue open for [Defendant
> McNeese] to come up with some evidence to show that my license was
> indeed suspended by Defendant [Department]. This cannot happen
> because Defendant [Department] has tabled its final determination that the
> [Department] only suspended my old expired [Florida identification] and
> [Florida vehicle registration] and not my [Texas driver's license] so
> [Defendant McNeese] is precluded from using any [Department]
> suspension and if he does it amounts to even more fraud. Therefore, there
> is no genuine issue of material fact that [Defendant McNeese] is liable for a
> part of my damages and is not shielded by any 11th Amendment
> protection.

[Doc. 62-1, p. 11]. The Court presents the analysis in its entirety to clearly show that

Plaintiff makes no effort to present an argument confined to the qualified immunity

framework discussed earlier. Instead, he appears to rely solely on the inaccurate

assertion that the Court already ruled in his favor. Furthermore, beyond this assertion,

---

[8] In this Order [Doc. 42], the Court, in consideration of Plaintiff's *pro se* status, directed Plaintiff to utilize the discovery process to seek information beneficial in pursuing his false arrest claim. Therefore, the Court informed Plaintiff that the ultimate issue in this case would largely center on the doctrine of qualified immunity and whether Defendant McNeese was entitled to it. [Doc. 42, p. 30].

[9] The Court notes that it issued this Order [Doc. 74] after Plaintiff moved for partial summary judgment.

it appears that Plaintiff alleges new and different factual theories (untethered to any proper record citation) to attempt to overcome the doctrine of qualified immunity. Such theories are clearly unpersuasive at this stage of the proceedings.

Furthermore, Plaintiff dedicates most of his motion for partial summary judgment to discussing the alleged liability of a formerly dismissed party, i.e., the Department. [Doc. 62-1, pp. 9–10, 11–12].[10] He also continues to detail those allegations pertaining to his formerly dismissed conspiracy claims. Neither of these matters are relevant to the ultimate issue in this action. Plaintiff has failed to present any case law showing that a deputy sheriff violates federal or constitutional law by arresting a person for driving a vehicle when records show his driving privileges to be suspended. The Court, upon diligent research, cannot find any caselaw either. Therefore, since Plaintiff failed to show a violation of a clearly established constitutional right, the Court must **DENY** Plaintiff's Motion for Partial Summary Judgment [Doc. 62].

---

[10] Plaintiff argues that the Department "bullied its way back into this instant case by filing a motion to quash the subpoena duces tecum for records from the [Department] and a demand for attorney fees." [Doc. 62-1, p. 11]. The Court can only conclude that this argument is grounded in the fact that Plaintiff filed a Motion to Compel against the Department to produce certain documents and the Department filed a response in opposition. Plaintiff then appears to allege that the Department's defense of his Motion subjects it to the Court's jurisdiction. However, the Court has already reviewed and addressed the merits of this argument in a prior Order, whereby it ultimately concluded that the Department is not a party to this action. [Doc. 74]. Therefore, the Court will not waste any more time reconsidering its prior rulings here.

### D.   Defendant McNeese's Motion for Summary Judgment

Having ruled on Plaintiff's Motion for Partial Summary Judgment, the Court now addresses the merits of Defendant McNeese's Motion for Summary Judgment. Ultimately, Defendant McNeese relies on the doctrine of qualified immunity to argue that he is shielded from suit against Plaintiff's false arrest claim. As noted earlier, the existence of probable cause at the time of the arrest is an absolute bar from suit for such a claim. *Brown*, 608 F.3d at 734; *see also Marx v. Gumbinner*, 905 F.2d 1503, 1505–06 (11th Cir. 1990). Therefore, the only relevant inquiry for summary judgment purposes is whether some level of probable cause existed for Defendant McNeese to arrest Plaintiff. And even then, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only arguable probable cause." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257; *see Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) ("[A]ll that is required for qualified immunity to be applicable to an arresting officer is *arguable* probable cause to believe that a person is committing a particular public offense[.]"). However, since Defendant McNeese argues that he had actual probable cause and arguable probable cause to arrest Plaintiff, the Court will consider the merits of each.

First, the Court lays out the standards for both actual probable cause and arguable probable cause. Actual probable cause exists "when the facts and circumstances, of which the official has reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed, is committing, or is

16

about to commit an offense." *Stefani v. City of Grovetown*, 780 F. App'x 842, 847 (11th Cir. 2019) (citing *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007)). Therefore, if the facts known to the arresting officer, when viewed objectively, can "give probable cause to arrest for *any* crime, [then] the arrest is constitutionally valid[.]" *Elmore v. Fulton Cnty. Sch. Dist.*, 605 F. App'x 906, 914 (11th Cir. 2015) (emphasis added). It is important to note that central to this analysis is the fact that "[n]o officer has a duty to prove every element of a crime before making an arrest." *Jordan*, 487 F.3d at 1355 (citing *Scarbrough*, 245 F.3d at 1302–03). "Police officers are not expected to be lawyers or prosecutors." *Scarbrough*, 245 F.3d at 1303 n.8. Rather, "[i]n order for probable cause to exist, 'an arrest [must] be objectively reasonable under the totality of the circumstances." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1119 (11th Cir. 1992)). And therefore, when reviewing the totality of the circumstances, the Court must be careful to consider "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Rankin*, 133 F.3d at 1435 (quoting *Revels v. State*, 666 So.2d 213, 215 (Fla. 2d DCA 1995)).

The standard governing arguable probable cause differs, most notably, in that it is a much less stringent standard. Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest[.]" *Scarbrough*,

245 F.3d at 1302 (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)).

The arguable probable cause standard is an objective one, and it recognizes that an

official may make a reasonable but mistaken judgment as to the existence of actual

probable cause. *See Grider*, 618 F.3d at 1257. Therefore, whether arguable probable cause

exists depends largely on the "information known to the defendant officers or officials

at the time of their conduct, not the facts known to the plaintiff then or those known to a

court later." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999). Despite the

difference in standards, the ultimate inquiry as to whether an arresting officer

possessed actual probable cause or arguable probable cause "depends on the elements

of the alleged crime . . . and the operative fact pattern." *Skop v. City of Atlanta*, 485 F.3d

1130, 1137–38 (11th Cir. 2007).

Since Plaintiff was arrested for driving while license suspended in violation of

O.C.G.A. § 40-5-121, the Court turns to the elements of that offense. Under Georgia law:

> any person who drives a motor vehicle on any public highway of this state
> without being licensed as required by subsection (a) of Code Section 40-5-
> 20 or at a time when his or her privilege to so drive is suspended,
> disqualified, or revoked shall be guilty of a misdemeanor for a first
> conviction thereof . . .

O.C.G.A. § 40-5-121(a). Appropriately, "Georgia law permits law enforcement

officers to arrest persons for driving on a suspended license." *Maines v. Spalding*

18

*Cnty. Police Dep't*, No. 3:17-CV-0159-TCB-RGV, 2017 WL 10431617, at *2 (N.D. Ga.

Dec. 4, 2017) (citing *Johnson v. State*, 676 S.E.2d 884, 887 (Ga. Ct. App. 2009)).[11]

Upon considering the relevant Georgia statute, the Court now examines whether

Defendant McNeese had any form of probable cause to arrest Plaintiff for violating it on

June 26, 2019. "Whether probable cause exists depends upon the reasonable conclusion

to be drawn from the facts known to the arresting officer *at the time of the arrest*."[12]

*Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371

(2003) (emphasis added). Therefore, the crux of this analysis begins and ends with an

overview of the facts known to Defendant McNeese at the time of the arrest, which the

Court briefly summarizes below.

In brief, Defendant McNeese initiated a traffic stop of a 2005 Ford Explorer upon

observing the driver of the vehicle failing to maintain lane. During the traffic stop,

---

[11] In his Response, Plaintiff appears to allege that Defendant McNeese violated his rights by wrongfully arresting him for failing to maintain lane, in violation of O.C.G.A. § 40-6-48. [Doc. 81-2, pp. 11–12]. Plaintiff argues that violating this traffic ordinance is a "non-arrest-able offense" and therefore, "[Defendant McNeese's] claim of 11th Amendment immunity . . . is not warranted here." [*Id.* at p. 12]. The Court cannot understand the relevancy of such an argument. Plaintiff was not arrested for failing to maintain his lane, nor has he ever claimed that he was in his pleadings. *See* [Doc. 8, ¶¶ 52–74]. Defendant McNeese arrested Plaintiff for the offense of driving while license suspended, in violation of O.C.G.A. § 40-5-121. [Doc. 71-2, ¶ 14]. And Georgia law clearly allows an officer to arrest a driver for violating this statute. *See Johnson v. State*, 676 S.E.2d 884, 887 (Ga. Ct. App. 2009); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2002) ("If an officer has probable cause to believe than an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Draper v. Reynolds*, 369 F.3d 1270, 1276 n.8 (11th Cir. 2004)(citing *Atwater*, 532 U.S. at 355); *Ortega v. Christian*, 85 F.3d 1521, 1523 (11th Cir 1996) ("[I]t is now settled law that there is probable cause for a warrantless custodial arrest even for a seemingly insignificant crime.").

[12] *See* n.5, *supra*.

Defendant McNeese requested that the driver of the vehicle—Plaintiff—present his license. Plaintiff complied, and Defendant McNeese then radioed a dispatcher to run Plaintiff's information through the Georgia Crime Information Center/National Crime Information Center system. The dispatcher informed Defendant McNeese that the report issued in response showed that the state of Florida had suspended Plaintiff's driving privileges effective January 31, 2019.

Based upon these facts, Defendant McNeese first argues that "[a]s a matter of Georgia law and federal law, probable cause exists to arrest under O.C.G.A. § 40-5-121 if an officer's on-the-scene check of the driver's out-of-state license shows that the license is suspended." [Doc. 71-1, p. 6 (citing *Carter v. State*, 395 S.E.2d 891, 892 (Ga. Ct. App. 1990))]. The heart of Defendant McNeese's argument is that he was entitled to rely on the information supplied by reports generated by the Georgia Crime Information Center/National Crime Information Center systems that showed Plaintiff's driving privileges to be suspended. This would establish actual probable cause.

In support of this argument, Defendant McNeese points to *McCullough v. State*, 438 S.E.2d 369 (Ga. Ct. App. 1993), a factually analogous case where the plaintiff alleges a false arrest after being arrested for driving while license suspended. In that case, a deputy initiated a routine traffic stop and requested the driver present his license. *McCullough*, 438 S.E.2d at 369. The driver presented a *Georgia* license, and the deputy then contacted the sheriff's department to have a dispatcher run the driver's license

information through a computerized system. *Id.* at 369–70. The response from the system showed that the driver's *Tennessee* license had been suspended. *Id.* at 370. Based upon this information, the deputy arrested the driver, and in turn, the driver filed suit alleging a false arrest based on a lack of probable cause. *Id.* The Georgia Court of Appeals held that a computer scan of the driver's driving record, whereby there was evidence of a suspension, provided the requisite probable cause to justify the arrest. *Id.* This holding is not particularly unique either. The Court conducted an independent review of the caselaw surrounding this issue and reached the conclusion that actual probable cause to arrest exists when computer reports show a driver's license to be suspended. *See Johnson v. State*, 676 S.E.2d 884 (Ga. Ct. App. 2009); *McKenzie v. State*, 431 S.E.2d 715 (Ga. Ct. App. 1993); *Vickers v. State*, 507 S.E.2d 810 (Ga. Ct. App. 1998); *Cox v. State*, 550 S.E.2d 127 (Ga. Ct. App. 2001). Furthermore, the Court reaches the same conclusion in consideration of relevant caselaw from various federal courts considering similar issues. *See, e.g., U.S. v. Shirley*, No. 1:10-CR-167-JEC/AJB, 2010 WL 5390138, at *8–9 (N.D. Ga. Nov. 10, 2010) ("Under federal law, probable cause supported [plaintiff's] arrest for driving on a suspended license based on a computer check run by [the arresting officer] which indicated that that his license was in suspension.); *see also United States v. Owens*, 142 F. Supp. 2d 255, 263 (D. Conn. 2001) (discussing how a detective's reliance upon a Department of Motor Vehicles computer printout indicating the plaintiff's license to be suspended was sufficient to support probable cause for an

arrest); *Johnson v. Harron*, No. 91-CV-1460, 1995 WL 319943, at *9 (N.D. N.Y. May 23, 1995) (discussing how it was reasonable for officers to arrest a driver for driving on a suspended license upon learning from a computer report issued by the Department of Motor Vehicles that his license was suspended); *James v. United States*, 709 F. Supp. 257, 260 (D.D.C. 1989). The caselaw regarding this matter clearly shows that a computer report, issued by an agency such as the Georgia Crime Information Center or National Crime Information Center, showing a driver's license to be suspended, can sufficiently establish actual probable cause to conduct an arrest for such an offense. Therefore, the Court concludes that Defendant McNeese had actual probable cause to arrest Plaintiff for driving while license suspended in violation of O.C.G.A. § 40-5-21 and is therefore entitled to qualified immunity.

While the Court concludes that Defendant McNeese had actual probable cause to arrest Plaintiff, even if this were not true, Defendant McNeese certainly had arguable probable cause to arrest Plaintiff. Upon review of the facts in this case, it is clear that Defendant McNeese could have reasonably believed Plaintiff to be driving with a suspended license, upon learning from a dispatcher that computer records showed his driving privileges to be suspended by the state of Florida. In fact, the Court does not see any other reasonable choice Defendant McNeese had but to consider the information supplied to him by a dispatcher reviewing records from the Georgia Crime Information Center/National Crime Information Center. Therefore, since Defendant McNeese acted

with at least arguable probable cause to arrest Plaintiff for driving while license suspended, he is entitled to qualified immunity against Plaintiff's false arrest claim. Accordingly, the Court **GRANTS** Defendant McNeese's Motion for Summary Judgment [Doc. 71].

## <u>CONCLUSION</u>

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment [Doc. 62] and **GRANTS** Defendant McNeese's Motion for Summary Judgment [Doc. 71] upon concluding that he is entitled to qualified immunity.[13] This Order concludes this case and the Clerk is **DIRECTED** to close this case. The Court reminds Plaintiff that he is entitled to appeal the Court's ruling to the

---

[13] Even though the grant of summary judgment resolves this case, there are several pending motions that the Court feels compelled to address on the merits. For example, Plaintiff moved the Court to "immediately disqualify the Office of the Florida Attorney General Ashley Moody and associate attorney Anita Jawaharlal Patel and Georgia attorney Jody Blake Everett from all future proceedings in this matter[.]" [Doc. 76-1, p. 1]. Further, Plaintiff moved the Court "to strike any and all pleadings filed by Anita Jawaharlal Patel who did not personally sign both of her Oaths of Admission and local attorney Jody Blake Everett who assisted attorney Patel in presenting false papers into this Court." [*Id.*]. In his Motion, Plaintiff appears to allege that all of the aforementioned individuals filed documents in this Court on behalf of other people and forged signatures to accomplish this endeavor. *See generally* [Doc. 76-1]. In support of this allegation, Plaintiff spends considerable time analyzing these peoples' signatures. [Doc. 76-5]. However, Plaintiff's analysis of the number of "peaks" and "loops" in each person's signature is completely unpersuasive in his argument that these people forged court documents. *See, e.g.,* [Doc. 76-5, pp. 2–3]; [Doc. 76-8, pp. 2–3] Throughout this Motion, Plaintiff merely alleges this new theory, and then largely cites to exhibits in support that he created himself. There is no reliable evidence to support Plaintiff's forgery/fraud claims, and therefore his Motion to Disqualify Counsel and Strike Affidavits [Doc. 76] is **DENIED**. Next, the Court considers Plaintiff's Motion for Leave to File an Amended Complaint [Doc. 84]. Plaintiff previously requested leave to amend his complaint after the close of discovery less than a month ago. [Doc. 68]. The Court issued an Order [Doc. 75] denying such a request. And yet, Plaintiff now moves to amend his complaint once again after the close of discovery. Upon review of the pleading, the Court concludes there is no acceptable reason to allow Plaintiff to alter this action after the close of discovery, and after both parties have submitted motions for summary judgment. The Court **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint [Doc. 84].

United States Court of Appeals for the Eleventh Circuit by filing a notice of appeal and

complying with the relevant statutes related to appeals.

**SO ORDERED**, this 26th day of February, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**